Belknap,
May 31, 1939. } No. 3075.

JUSTINE I. RUEL, *Ex'x v.* EVA G. HARDY, *& a.*

*Tilton & Tilton,* for the executrix.

*Dyer & Doherty (Mr. Doherty* orally), for Eva G. Hardy.

*Frederick W. Fitzpatrick, pro se,* administrator *c. t. a.* of the will of Benjamin J. Smith.

WOODBURY, J. The first inquiry relates to paragraph eight of the will which, so far as is here material, reads as follows: "My home . . . I give to my husband Benjamin J. Smith with all the household belongings, to use, and enjoy during the term of his natural life, and upon his death, the same is to go to my only sister Eva G. Hardy, to be used by her, during the period of her natural life, after which it must be sold, and the money received from said sale, be sent to The Christian and Missionary Alliance New York City office and be used for Gospel Missionary work." Benjamin J. Smith died after the testatrix; Eva G. Hardy is still living. The executrix inquires if the "taxes, insurance, repairs, and maintenance costs," upon the real property named in the above devise are charges against the estate of the testatrix during the lifetime of Eva G. Hardy.

There being nothing to indicate that the estate is insolvent the executrix is informed that she is not concerned with the real property formerly owned by her testatrix. Under well established principles it passed at once upon the death of the testatrix to her devisees. *Lucy* v. *Lucy*, 55 N. H. 9; *Perkins* v. *Perkins*, 58 N. H. 405; *Ayers* v. *Laighton*, 73 N. H. 487; *Wentworth* v. *Wentworth*, 75 N. H. 547, 550. It follows from this that the estate of the decedent has no beneficial interest in the property and hence no insurable interest. *Prince* v. *Insurance Co.*, 86 N. H. 160. The other expenses enumerated above, since there is nothing to show that they are in any sense extraordinary, are chargeable against the life tenant. *Hanley* v. *Wadleigh*, 88 N. H. 174, 177, and cases cited; see also *Burke* v. *Millikin*, 69 N. H. 501, 502.

The next request for instructions raises the question of whether the testatrix intended Benjamin J. Smith to have a life estate or the entire beneficial interest in the property given to him by paragraphs nine and ten of the will. These paragraphs read as follows:

"*Ninth:* All the rest, residue and remainder of my estate, both real, personal and mixed, including mortgages and notes and interest on same, not herein before bequeathed and devised, I give bequeath and devise to my husband, Benjamin J. Smith to use and enjoy.

"*Tenth*: Be it therefore remembered that my said husband Benjamin J. Smith is herein given the privilege to use any and all said household furnishings, such as piano, bedstead, Radio, etc.; as long as he cares to."

A gift of "the use" of property is a direct gift of the property itself, (*Keniston* v. *Gorrell*, 74 N. H. 53, 54 and cases cited), "without the intervention of a trustee or other agency." *Little* v. *Coleman*, 74 N. H. 215, 216. The question here is as to the nature of the gift,

whether it was of the entire interest or only of an interest for the life of the donee. The question presented is one of the intention of the testatrix, which is one of fact in the last resort for this court, (*Borchers* v. *Taylor*, 83 N. H. 564), and the evidence of intention is to be found not only in the particular paragraphs of the will in which the gifts were made, but also in the provisions of the will as a whole. *Marvin* v. *Peirce*, 84 N. H. 455, 457, and cases cited.

In paragraphs two to seven inclusive of the will, outright gifts of the entire interest in chattels and money were made to various individuals and charitable organizations. In each of these paragraphs the only words of gift employed were "I give and bequeath." In the eighth paragraph of the will, quoted earlier in this opinion, there appears a radical change in phraseology. In it for the first time appears a gift of use and enjoyment, and with this form of words are used words appropriate to limit the bequest to one for life only. From the coupling of the words "use" and "enjoy" in this paragraph with the words of limitation appropriate to create a life estate, the defendant Hardy argues that the testatrix in repeating the words "use" and "enjoy" in the ninth paragraph intended in it also to create an estate for life even though she omitted the words of limitation. This argument is not wholly without merit, but we find a basis in the will for countervailing arguments of greater persuasive force.

In the first place, the use by the testatrix of the words "during the term of his natural life" in connection with the gift which she made to her husband in the eighth paragraph of her will, and her use in that same paragraph of the words "during the period of her natural life" in connection with the gift made therein to her sister, unmistakably indicates that the testatrix knew how to carve out a life estate. Her failure to use similar words of limitation in the succeeding paragraph of her will provides persuasive evidence that she did not intend a similar limitation upon the gift therein made.

In the second place, the testatrix in paragraph eight of her will, apparently with full realization of the nature of an estate for life, was careful to dispose of the remainder interest which follows the creation of such an estate. Her failure to make a devise over of any remainder in the ninth paragraph, while it does not conclusively show that by it she intended to give the entire interest (*Sheafe* v. *Cushing*, 17 N. H. 508, 515), it does, when considered in the light of the immediately preceding paragraph of the will, strongly indicate an intention on her part to give the entire interest in the property conveyed. On the whole we believe that the second and third arguments more

than counterbalance the first, and the testatrix is therefore advised that the legatee in the ninth clause of the will took the entire interest in the property bequeathed.

The above arguments do not apply to the tenth paragraph of the will in spite of the fact that in that paragraph the testatrix employed the phrase "to use . . . as long as he cares to." The reason for this is that the property mentioned in that paragraph is "any and all said household furnishings" and in paragraph eight of the will the same legatee is given in unmistakable terms a life estate in "all the household belongings." It is obvious that the same property is referred to in each paragraph; the "said household furnishings" mentioned in the later paragraph can only be construed to mean the "household belongings" bequeathed in the earlier one. Construing these paragraphs together and in such a way as to avoid a conflict between them, the executrix is advised that her testatrix in the tenth paragraph of her will did not intend to enlarge the life estate in the household furnishings, which she had already given to her husband in the eighth paragraph of her will, into a bequest of the entire beneficial interest in them, but that, in the later paragraph, she only intended to emphasize the gift for life which she had previously made.

The remaining questions relate to the interpretation of a codicil which, after reciting that the testatrix had been appointed the executrix of the estate of Almina A. Dinsmore, deceased, by the Probate Court for Middlesex County, Massachusetts, provides: "*Second:* Should there be any money left me from said Almina A. Dinsmore Estate I desire it to be used as follows: To my son-in-law Carl M. Smith I give one hundred dollars. *Third:* To Frank W. Parsons, and to Walter E. Parsons and Mrs. Lilla A. Smith all of Salisbury Heights, N. H., I give ~~five~~ [*sic*] hundred dollars to each one."
one

The fourth paragraph contains a bequest of one hundred dollars each to named grandchildren, and the fifth reads: "To my only sister Eva G. Hardy of Lakeport, N. H., I give fifty dollars per month the period of her natural life—" The sixth and seventh paragraphs contain bequests of one hundred dollars to named beneficiaries and the eighth provides: "The remainder I give and bequeath to my dear husband Benjamin J. Smith to use as he sees fit—from the Almina A. Dinsmore Estate."

The testatrix was the sole residuary legatee as well as the executrix under the will of Almina A. Dinsmore, and a copy of her final account, which was printed in the appendix to the transferred case, shows that she received under this residuary clause the sum of $19,976.78.

The executrix first inquires "whether the property included in clauses numbered First to Eighth inclusive relates solely to property acquired from the Estate of Almina A. Dinsmore or whether the bequests in said clauses or any part thereof shall be paid from other estate of the said Ethel M. Dinsmore Smith."

The first part of this question must be answered in the affirmative; the second part in the negative. The introductory statement contained in the first clause of the codicil summarized above, and the second and eighth clauses quoted above at length, leave no room to doubt that the testatrix in drawing the codicil to her will intended in the first eight clauses thereof to make disposition of only the funds which she then expected to acquire from the Almina A. Dinsmore estate. This conclusion is supported by the fact that the codicil does not alter or modify the disposition which she made of her property in her will, but only adds bequests to persons not mentioned therein. It is not weakened by the fact that the testatrix before her death came into possession of the residue of the Dinsmore estate and mingled the funds thus acquired with other property of her own. Such a mingling of her property is a natural and normal act; it does not evince an intention contrary to that unmistakably expressed in the codicil.

The executrix next inquires if "any of said bequests have priority over any other," as to when said bequests are payable, and "When if at all should payments under the provision of clause numbered 'Fifth' to Eva G. Hardy of Fifty Dollars per month for the period of her natural life begin."

There is nothing in the codicil to indicate an intention on the part of the testatrix that any one of the legacies numbered second to seventh inclusive as therein contained should have priority over any other. Since they are all general legacies there is no priority among them, and the order in which the legatees are named is immaterial. *Hall* v. *Smith,* 61 N. H. 144, 147; *Sumner* v. *Society,* 64 N. H. 321; *Ellis* v. *Aldrich,* 70 N. H. 219; *Frost* v. *Wingate,* 73 N. H. 535; P. L., *c.* 307, *s.* 16.

We are not called upon to consider the question of the apportionment between the legatees of specific sums and the legatee of the annuity of a possible insufficiency in the assets of the estate to pay the expenses of administration and all the legacies. The reason for this is that there is no allegation of such a deficiency and neither is there any probability of one. However, should there develop an insufficiency of funds to meet in full all the demands made upon them, the question of apportionment should, in the first instance, be

presented to the Probate Court. P. L., c. 307, s. 17. It may be there determined by ascertaining the cost of an annuity to yield the sum called for by the bequest made in clause five.

All of these legacies are payable at the end of one year after the death of the testatrix. The payment of the annuity should then commence. If not then paid, all legacies bear interest after that date. *Dennison* v. *Lilley*, 83 N. H. 422, 424, and cases cited.

The next question relates to the interpretation of the third clause of the codicil quoted above. There is no evidence as to when the word "five" was lined out and the word "one" written under it. Under these circumstances, the burden of proof being upon the proponent of the will (*Gaffney* v. *Coffee*, 81 N. H. 300), we must consider this question as though the alteration was made after the execution of the codicil. *Martin* v. *Martin*, 334 Ill. 115. It follows that the word "one," there being no proof of its attestation as required by P. L., c. 297, s. 2, is not a part of the codicil and is without testamentary effect.

It is suggested, however, that an attempt to reduce a legacy in the way adopted by the testatrix in the case at bar constitutes in reality a cancellation of the excess of the amount originally given over the amount subsequently written in. In other words, it is said that the act of drawing a line through the word "five" and writing in the word "one" amounts to a revocation *pro tanto* of that clause of the will in accordance with the provisions of P. L., c. 297, s. 13. No cases in which this argument has been followed, or even considered, have come to our attention, and some of the cases cited on page 1407 of the note in 62 A. L. R. are cases in which the reduction of a legacy was attempted. See *Wetmore* v. *Carryl*, 5 Redf. (N. Y.) 544. Furthermore, this argument is contrary to a statement of this court in the case of *Gardner* v. *Gardiner*, 65 N. H. 230. It is there said (*p.* 231), in relation to acts similar to those of the testatrix in the case at bar, that "while in one sense this was a revocation by the testatrix of what she had previously done, in the true sense it was an alteration. To revoke a testamentary disposition is to annul it, so that in legal contemplation it ceases to exist and becomes as inoperative as if it had never been written. But when by the substitution of certain words for others a different meaning is imparted, there is not a mere revocation. There is something more than the destruction of that which has been antecedently done. There is a transmutation, by which a new clause is created. There is another and a different testamentary disposition, which, to have validity, must be authenti-

cated by the observance of the statutory requirements." The executrix is accordingly informed that the legatees named in the third clause of the codicil are not entitled to take one hundred dollars apiece thereunder.

The question remains whether those legatees are entitled to the five hundred dollars each, originally given to them or whether they are entitled to nothing.

Under the doctrine of dependent relative revocation, which obtains in England and in the majority of jurisdictions in this country, the word "five," although revoked in accordance with the statute of this state which permits the cancellation of a clause in a will, (P. L., c. 297, s. 13), would remain effective because of the abortive attempt to change it into the word "one." This doctrine is stated as follows: "When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force. This rule is styled the doctrine of dependent relative revocation. It is based upon the presumption that the testator performed the act of revocation with a view and for the purpose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged, in the absence of known and sufficient reason for changing them." 62 A. L. R. 1401. Cases similar to the one at bar in which this doctrine has been applied are cited in the above note at page 1407. See also *Thomas* v. *Thomas*, 76 Minn. 237; *Locke* v. *James*, 11 M. &. W. 901.

This rule raises only a rebuttable and not a conclusive presumption of the intention of the testatrix (28 R. C. L. 182, 185), and in consequence (*State* v. *Kilcoyne*, 82 N. H. 432; *Heffenger* v. *Heffenger*, 89 N. H. 530), it does not apply when there is some actual evidence on the question of the testatrix's intention, which is one of fact to be determined by reference to all the competent evidence and, so far as may be, without resort to arbitrary rules. *Remick* v. *Merrill*, 80 N. H. 225, 227; *Clark* v. *Campbell*, 82 N. H. 281, 285; *Marvin* v. *Peirce*, 84 N. H. 455, 457; *Bellows* v. *Page*, 88 N. H. 283, 286.

In cases of this sort "The inquiry should always be: What would the testator have desired had he been informed of the true situation," (33 Harv. Law Rev. 337, 345), that is to say, what would he have wished his legatees to have, had he known that the attempted alteration could not be given effect and that they could take only either the amount which he originally gave them or nothing. On this question evidence of the testatrix's pertinent oral declarations and of the circumstances under which the alteration was made is admissible (*Managle* v. *Parker*, 75 N. H. 139), but in the case at bar there is no such evidence. In fact, the executrix informs us that she "has no knowledge or information concerning this clause of the codicil excepting what appears in the codicil itself and has no information as to when or under what circumstances the word 'five' was crossed out and the word 'one' written."

The only inkling of intention to be gleaned from either the clause or the entire will itself is found in the amount of the reduction. Had the testatrix reduced the amount bequeathed to a purely nominal sum, it would provide persuasive evidence that she would prefer that the legatees have nothing rather than that they should have the amount which she originally gave them. On the other hand, a slight reduction would tend to show a contrary intention. A reduction of eighty per cent of the legacy tends more to show a preference on her part that her legatees should have nothing rather than that they should have the full sum, and since this is the only evidence in the case, the executrix is informed that the legatees named in the third clause of the codicil take nothing under it.

This is not by any means to say that the question of intention here presented is always to be solved by a mathematical formula. Mathematics may shed a great deal of light on this question of intent or it may shed only a little. It is only one of the evidentiary facts which might be present in cases of this sort, and its weight will vary in different cases. In the case at bar this evidence is taken to be determinative only because it is the only evidence available.

The case of *Gardner* v. *Gardiner*, 65 N. H. 230, is generally cited in the texts as one in which the doctrine of dependent relative revocation was applied. While these citations are accurate, it is to be noted that the result which this court reached in that case is predicated fully as much upon actual evidence of the testatrix's intention as upon any presumption with regard to it.

The remaining questions of the executrix may be briefly answered.

Due to the annuity bequeathed by the fifth clause of the codicil

and the executrix's duties to invest the residue of the estate as a trustee in order to provide and maintain the funds necessary to pay it (*Healey* v. *Toppan*, 45 N. H. 243, 268), her final account cannot be settled until the death of the annuitant.

By reason of her above duties with respect to the residue of the estate as well as by reason of the fact that its amount cannot be ascertained until the annuitant's death, the residue disposed of by the eighth clause of the codicil cannot, until that time, be turned over to the administrator *c. t. a.* of the estate of Benjamin J. Smith. Until that time the only interest of the latter is in such part of the residue, if any, as is over and above the amount required to provide for the annuity, and also any surplus of annual income therefrom, if any there be. *Healey* v. *Toppan*, *supra*.

*Case discharged.*

All concurred.