IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF FRANK E. SHULER, DEC'D.

MARGUARETTE CRAWFORD MORRIS, PLAINTIFF-RE-SPONDENT, v. CHARLES H. HOFF, *ET ALS.*, DEFEND-ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 6, 1957—Decided May 28, 1957.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Ralph S. Mason* argued the cause for plaintiff-respondent (*Messrs. Mason, Griffin & Moore,* attorneys).

*Mr. Nathan Finkle* argued the cause for defendants-appellants.

The opinion of the court was delivered by
CLAPP, S. J. A. D.   Appeal is taken from a judgment of the Mercer County Court, admitting to probate the will of Frank E. Shuler, dated September 29, 1948, as originally typewritten, that is, without certain interlineations and cancellations appearing in pen on the will.  The case involves the so-called doctrine of dependent relative revocation, or, as it might better be termed, the doctrine governing revocations made on condition or under a mistake.

The testator died April 29, 1956, a resident of Hamilton Township in the County of Mercer.  The parties apparently agree that the will was in his possession at his death, altered as above stated, and with the following notation appearing at the end of the will:

"Changed by me this 11th day of Jan. 1956.  Frank E. Shuler."

It is to be inferred from the face of the instrument, read with this notation, that the alterations were not of a tentative character and, moreover, that they were all made at the same time. It also may be inferred that the testator thought they were legally effective. After making the changes, he did not again execute the will.

By the second paragraph of the will as originally written the testator gave his estate to his wife or, if she predeceased him (as she did), then to "my niece [in fact, she was his wife's niece] Marguarette Crawford Morris," and if Mrs. Morris also predeceased him, then to "my niece [another niece of his wife] May Stewart" of Trenton, or if these three persons predeceased him, then to his heirs and next of kin. On January 11, 1956 the testator heavily deleted the name of Mrs. Morris, and struck out the word "niece"; above these words, he interlined the words "grandniece Dorothy Trossbach" of Princeton, a daughter of Mrs. Morris. Obviously his intention was to make Dorothy the beneficiary of the estate in lieu of her mother. He also heavily deleted the words "my niece, May Stewart," but interlined no name in substitution for it.

In the fourth paragraph of the will, as originally typed, he appointed his wife executrix, or in case of her death or upon other contingencies, then Mrs. Morris, or in case of the latter's death also or upon other contingencies, then May Stewart. The three names, those of the wife and of the two nieces, were obliterated, and Dorothy Trossbach's name was interlined above that of the wife and also above that of Mrs. Morris.

As above stated, the testator's wife predeceased him, but her two nieces and grandniece, Dorothy, all survived him. Under the will as probated by the County Court Mrs. Morris takes the estate and will be the executrix. The appellants, testator's heirs and next of kin, are his two half-brothers, a half-sister, children of deceased half-sisters and a widow of one of these children, all resident in Montgomery, Pennsylvania.

The principal question raised by the appeal is whether the cancellation of the name of Mrs. Morris is rendered legally ineffective by the interlineation, at the same time, of the name of Dorothy Trossbach. It should be noted that no one contends that Dorothy takes. It may be noted, too, that although the judgment below apparently directs that May Stewart's name be restored to the will notwithstanding its deletion therefrom, still this is a matter of no consequence unless perhaps an application were ever made for the issuance of letters to her as a substituted executrix.

It is likely that the testator *assumed* that the purported gift to Dorothy was good, and hence that he intended to revoke the gift to her mother absolutely; it is quite improbable that he had in mind a condition, namely, that the revocation was to be ineffective if the gift to Dorothy failed. Therefore we are not dealing with a revocation made on condition. At most it may be inferred that the testator acted under a mistake—a mistake of law (*Warren, "Dependent Relative Revocation,"* 33 *Harv L. Rev.* 337, 344, *n.* 28 (1920); 1 *Page, Wills* 879 (*3d ed.*))—as to the effectiveness of the gift attempted to be made in Dorothy's favor. *In re Gorrell's Estate,* 19 *N. J. Misc.* 168, 175 (*Orph. Ct.* 1941); *Warren, supra,* 337; but *cf. Schneider v. Harrington,* 320 *Mass.* 723, 71 *N. E.* 2d 242, 244 (*Sup. Jud. Ct.* 1947).

Where such a cancellation is accompanied by an ineffective interlineation, both forming part of one transaction, the authorities in most jurisdictions automatically probate the will as originally executed. *Annotations,* 62 *A. L. R.* 1367, 1407 (1929), 24 *A. L. R.* 2d 514, 556 (1952); *Page, supra,* 880, 881. See *Smith v. Runkle,* 97 *A.* 296, 304, 305 (*Orph. Ct.,* affirmed by *Prerog. Ct.* 1915), the third question in the case. However, as counsel have not observed, the decree disposing of this question was reversed, *sub nom. Smith v. Haines,* 86 *N. J. Eq.* 224, 229 (*E. & A.* 1916) (it might be helpful to add that *Smith v. Runkle* was affirmed for the reasons stated below with respect to the first question in the case, 86 *N. J. Eq.* 257 (*E. & A.* 1916), and with respect to the second question, *sub nom. Smith v. Scholfield,* 98 *A.*

1087 (*E. & A.* 1916)). While the highest court in *Smith v. Haines* found it unnecessary to pass on the instant question, it did make this significant observation: "That doctrine [of dependent relative revocation] is hardly applicable to the substitution of one name in place of another as executor."

The better rule in the case of strike-outs and substitutions is not to probate mechanically the will as it originally stood, but to abide by the testator's intentions. *In re Smalley's Estate,* 131 *N. J. Eq.* 175, 178 (*Prerog Ct.* 1942); *In re Gorrell's Estate,* 19 *N. J. Misc.* 168, 171–175 (*Orph. Ct.* 1941); *Warren, supra,* at 341; *Page, supra,* at 875. Proof is admissible as to the testator's relations with the original beneficiaries at about the time of the cancellation (*In re Frothingham's Case,* 76 *N. J. Eq.* 331, 335 (*E. & A.* 1909)), and as to other surrounding circumstances which might cast light on his intentions at that time. No question has been raised here with respect to the admissibility of declarations made by the testator. *Cf. In re Allen's Will,* 88 *N. J. Eq.* 291, 295 (*Ch.* 1917), affirmed 89 *N. J. Eq.* 208 (*E. & A.* 1918); *Ruel v. Hardy,* 90 *N. H.* 240, 6 *A. 2d* 753, 759 (*Sup. Ct.* 1939); 6 *Wigmore, Evidence* § 1782 (3d ed.); *Warren, supra,* 339; *Cornish, "Dependent Relative Revocation,"* 5 *So. Cal. L. Rev.* 273, 393, 415 (1932); but *cf. Sanderson v. Norcross,* 242 *Mass.* 43, 136 *N. E.* 170, 172 (*Sup. Jud. Ct.* 1922).

With proof before it as to such surrounding circumstances, the court then, in many cases where there has been a cancellation and an accompanying interlineation, will be pulled in two directions. On the one hand, it will be anxious to effectuate the testator's underlying purposes; this solicitude for the testator's intentions is one of the governing considerations in the law of wills. *Cf. Smith v. Haines,* 86 *N. J. Eq.* 224, 226 (*E. & A.* 1916). On the other hand, the court will be reluctant to enter upon the somewhat speculative task of determining those intentions in this connection; for in reality it is then being asked to decide what the testator would have desired, had he known his mistake and been aware that a choice must be made between

a cancellation of the gift and an effectuation of it as originally written. *Warren, supra,* 345; *Page, supra,* 876. Having in mind the speculative nature of such an undertaking, we think that the cancelled words must be deemed to have been revoked unless the court is satisfied, by a preponderance of the proofs and inferences, that the testator would have preferred to have the words probated. *Cf. In re Smalley's Estate,* 131 *N. J. Eq., supra,* at *page* 178 *(Prerog. Ct.* 1942); *In re Gorrell's Estate,* 19 *N. J. Misc., supra,* at *pages* 171–175 *(Orph. Ct.* 1941).

The proper approach is somewhat indicated by the following authorities, though we do not in this case pass upon the situation where a legacy is increased or decreased in amount. Thus Owen J. Roberts in an article on *"Dependent Relative Revocation of Wills,"* 49 *U. Pa. L. Rev.* 18, 33 (1901), said:

"* * * If A. cancels a legacy of $500 to B. and substitutes one of $300, it is no more than a guess for a court to say that the testator would wish B. to have $500 rather than that he should have nothing, if it were impossible for B. to have the $300. *A fortiori* is this true in a case where A's name is substituted for B.'s. If A cannot take there is, to the writer's mind, a presumption that testator would rather that no one should take, than that B. should."

See 1 *Page, Wills* 881, 882 (3d ed.):

"* * * In case of a complete change of beneficiary, it seems that testator intends that the first beneficiary shall not take; and whether he wishes to die intestate in case his gift to the second beneficiary can not be given effect is a matter of pure conjecture. If the amount of the gift is reduced slightly, it might seem likely that testator would prefer the original gift to nothing at all; but if the amount of the gift is greatly reduced it might seem likely that testator would prefer intestacy to the original gift."

See too, *Page, supra,* 875. In *Atkinson, Wills,* 458–459 (2d ed.), it is said:

"* * * it would seem reasonable to allow the original bequest to stand if it had been increased by an unattested change, while if

the bequest were decreased to much smaller amount cancellation of the former should normally work a revocation. This is a rational approach, much preferred to the orthodox mechanical viewpoint, based on the fiction of a conditional revocation."

See *Ruel v. Hardy*, 90 *N. H.* 240, 6 *A.* 2d 753, 759 (*Sup. Ct.* 1939), in accord. Further see *Cornish, supra,* at 394 *et seq.; Evans, "Testamentary Revocation by Act to the Document and Dependent Relative Revocation,"* 23 *Ky. L. J.* 559, 584 (1935).

Where a testator substitutes the name of a daughter for that of her mother, his wife's niece (not one of his next of kin), it may perhaps be that he would rather have had the mother take, than have the whole line cut off, and the estate pass to other persons—persons unrelated to his wife—persons to whom he might not have been very close. He may merely have wanted to avoid the inheritance tax that would be imposed on the mother's estate if he had given his estate to her and she, having ample means herself, merely passed it on to her daughter. On the other hand, it was indicated on the oral argument that just before he struck out the mother's name, he (perhaps an old man) had asked to have her take care of him in her home, and she had refused to do so. Was this the reason for striking out the mother's name? Why was May Stewart's name also cancelled? Other questions occur, but they need not be set out here.

The case was heard below on nothing but the argument of counsel and their memoranda of law. Under the circumstances, justice calls for a remand of the case for the taking of proofs as above indicated and for such further findings and conclusions as the trial court may wish to make with respect to those proofs. We should not in this case rest our conclusion merely on speculations drawn from the face of the instrument.

We will in the meantime retain the appeal.