Rockingham County Probate Court
No. 95-156

*In re* ESTATE OF EDWARD R. LAURA, SR.

March 7, 1997

*Engel, Gearreald & Gardner, P.A.*, of Exeter (*Mark S. Gearreald* and *James H. Gambrill* on the briefs, and *Mr. Gearreald* orally), for the petitioners.

*Ganz Law Office*, of Seabrook (*Mary Keohan Ganz* on the brief and orally), for the respondent, the Estate of Edward R. Laura, Sr.

THAYER, J. The testator, Edward R. Laura, Sr., died on August 23, 1990. The petitioners, two generations of the testator's heirs who were excluded from his will, appeal a decision of the Rockingham County Probate Court (*Maher*, J.), approving the order of the Master (*Gerald Taube*, Esq.), that barred them from inheriting any portion of the testator's estate. On appeal, the petitioners argue that the probate court erred in: (1) ruling that the testator did not revoke his will when he drafted an unexecuted codicil in 1990; (2) ruling that the testator's great-grandchildren were not pretermitted heirs under RSA 551:10 (1974); and (3) refusing to segregate certain assets from the testator's estate. We affirm in part, vacate in part, and remand.

The record reveals the following facts. The testator had three children. Two children, Edward R. Laura, Jr. and Shirley Chicoine, survived him. Shirley and Edward each have three children. The testator's third child, Jo Ann Laura, died in 1974. She was survived by two children, Richard Chicoine and Neil F. Chicoine, Jr. Neil died in 1988 and is survived by two children, Cecilia Chicoine and Neil F. Chicoine, III, the testator's great-grandchildren. Richard, acting on

behalf of himself and the testator's great-grandchildren, and Edward are the petitioners here.

Sometime prior to September 17, 1984, the testator hired an attorney to draft his will. The will was executed on September 26, 1984. It provided that the testator's estate would pass to his daughter, Shirley, who was also designated as the executrix of his estate. In addition, the will named the testator's deceased daughter, Jo Ann, and explicitly named his son, Edward, and his grandchildren, Richard and Neil, in a paragraph designed to disinherit them. Paragraph seven of the will provided:

> I have intentionally omitted to provide in this Will for any heirs at law, next of kin, or relatives of mine, by blood, marriage or adoption, specifically but not limited to my son, Edward and my grandchildren, Richard and Neil, except as aforesaid, and such omissions are not occasioned by accident or mistake.

The will did not mention the testator's two great-grandchildren. Cecilia Chicoine was born one day before the will was executed; Neil F. Chicoine, III was not born until two years after the will was executed.

In 1990, the testator attempted to execute a codicil to his will. The codicil would have altered the disposition of his estate, giving three equal shares to Edward, Shirley, and Richard, and equal shares to Shirley's and Edward's respective children. The parties agree, however, that the codicil was not properly witnessed and therefore did not become effective. Although the petitioners presented testimony regarding the drafting of the codicil, the codicil was not produced for probate.

Following the testator's death, his 1984 will was presented to the probate court. The will was proved and allowed, and Shirley was appointed executrix on September 30, 1990. In 1991, Richard, on behalf of himself and the testator's great-grandchildren, and Edward petitioned the probate court to re-examine the 1984 will. They challenged the will on several grounds: (1) the testator revoked his will when he attempted to execute the ineffective codicil in 1990; (2) the testator's great-grandchildren were entitled to an intestate share of his estate because they qualified as pretermitted heirs under RSA 551:10; and (3) the testator's estate included assets belonging to his deceased daughter, Jo Ann, that should be segregated and turned over to Jo Ann's heirs.

At the master's instruction, each party proceeded largely on the basis of offers of proof. The master held that the petitioners failed to prove that the testator revoked his will when he drafted the 1990

codicil. In addition, the master ruled that the testator's great-grandchildren were not pretermitted heirs under RSA 551:10. Finally, the master held that the petitioners failed to prove the testator's estate contained assets belonging to Jo Ann, and that this claim was in any event barred by the doctrine of laches. The probate court adopted each of the master's findings.

## I. Revocation of the 1984 Will

■ The first issue on appeal is whether the probate court erred in ruling that the testator did not revoke his will when he attempted to execute a codicil in 1990.

In New Hampshire, a testator can revoke a will by (1) properly executing a separate will, codicil, or other writing, or (2) performing a physical act of destruction. *See* RSA 551:13 (1974). Either act must be accompanied by an intent to revoke. *Managle v. Parker*, 75 N.H. 139, 141, 71 A. 637, 638 (1908). The petitioners concede that the testator did not satisfy the requirements of RSA 551:13. Nonetheless, relying on the doctrine of dependent relative revocation, they argue that the testator revoked his 1984 will when he attempted to execute the 1990 codicil.

New Hampshire adopted the doctrine of dependent relative revocation more than 100 years ago. *See Gardner v. Gardiner*, 65 N.H. 230, 19 A. 651 (1890). The doctrine provides that "[w]hen a portion of a will is cancelled with a view to a new disposition of the property, and the proposed disposition fails to be carried into effect, the presumption in favor of the cancelling will be repelled, and the will will stand as originally framed." *Id.* at 233, 19 A. at 653 (quotation omitted). We outlined the rationale underlying the doctrine in 1939:

> This rule . . . is based upon the presumption that the testator performed the act of revocation with a view and for the purpose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged . . . .

*Ruel v. Hardy*, 90 N.H. 240, 247, 6 A.2d 753, 759 (1939) (quotation omitted). The doctrine only establishes a rebuttable presumption; it does not apply when there is actual evidence that reveals the testator's intent. *Id.*

Relying on the doctrine, the petitioners contend that the testator revoked his original will by attempting to execute a codicil in 1990. They presented evidence to the probate court, in the form of an offer of proof, that the testator intended to revoke his original will even though the codicil was ineffective. As a result, they claim to have rebutted the presumption established by the doctrine of dependent relative revocation and urge us to conclude that the testator revoked his will.

The doctrine of dependent relative revocation, however, has no application in this case; the doctrine only applies in cases in which there has been a valid revocation of an existing will. We so hold for three reasons. First, in most cases in which the doctrine has been applied, the court assumed that the testator properly revoked one will but created an ineffective substitute. *See id.* at 247-48, 6 A.2d at 759-60; *Gardner*, 65 N.H. at 232-33, 19 A. at 653.

Second, the elements of the doctrine have been described as including the valid revocation of a prior will:

> [T]he established rule is that if a testator *cancels or destroys a will* with a present intention of making a new one immediately and as a substitute, and the new will is not made, or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in the absence of evidence overcoming the presumption.

79 AM. JUR. 2D *Wills* § 563, at 675 (1975) (emphasis added).

Third, allowing dependent relative revocation to apply in cases in which no revocation has occurred would undermine RSA 551:13. As noted above, the statute provides that a will may be revoked in only two ways, by executing a valid will, codicil, or other writing, or by performing a physical act of destruction. *See* RSA 551:13. If the doctrine of dependent relative revocation applies when a testator with a valid will improperly executes a second will or codicil, then a testator could revoke a prior will without complying with the statutory requirements of RSA 551:13.

We are aware that the petitioners' reliance on the doctrine of dependent relative revocation has support in our prior decisions. In *In the Matter of Rice*, 118 N.H. 528, 390 A.2d 1146 (1978), the testator executed a valid will in which he bequeathed his entire estate to his wife and his five step-children. Seven years later, however, the testator and his wife divorced. *Id.* at 529, 390 A.2d at 1147. Following their separation, but prior to their divorce, the testator went to a local store and asked two people to witness a new,

handwritten will. *Id.* at 530, 390 A.2d at 1147. This holographic instrument bequeathed most of his property to one of his natural children, Beverly Townes. When the testator died, Townes petitioned to prove the holographic will in common form, but the probate court denied her petition because the will lacked the requisite number of witnesses. Nonetheless, the testator's natural children argued that the holographic will revoked the testator's original will, leaving his estate to be distributed according to the laws of intestacy. *Id.*

We applied the doctrine of dependent relative revocation in ruling that a testator's invalid holographic will did not revoke his original valid will. Although the result in *Rice* was correct, we should not have relied on the doctrine of dependent relative revocation. *See* 7 C. DEGRANDPRE, NEW HAMPSHIRE PRACTICE: WILLS, TRUSTS AND GIFTS § 9.02, at 71 n.10 (2d ed. 1992) (questioning the reasoning relied on in *Rice*). In determining whether a testator has revoked a prior will, the proper inquiry is whether the testator satisfied the requirements of RSA 551:13. *See Gardner*, 65 N.H. at 231-32, 19 A. at 652; *see also Harchuck v. Campana*, 95 A.2d 566, 568 (Conn. 1953); *Appeal of O'Brion*, 115 A. 169, 170 (Me. 1921).

In this case, the petitioners concede that the testator failed to satisfy the requirements of RSA 551:13 because his 1990 codicil was improperly executed. As a result, we hold that the testator did not revoke his first will. *See Gardner*, 65 N.H. at 231-32, 19 A. at 652; *Crawford's Estate v. Crawford*, 82 So. 2d 823, 825-26 (Miss. 1955).

Although the probate court erroneously relied on the doctrine of dependent relative revocation, reversal is not required. "When a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it." *Quinlan v. City of Dover*, 136 N.H. 226, 230, 614 A.2d 1057, 1059 (1992) (quotation omitted). Accordingly, we affirm this part of the probate court's ruling.

## II. Pretermitted Heirs

■ The second issue on appeal is whether the probate court erred in ruling that the testator's great-grandchildren were not entitled to an intestate share of his estate under RSA 551:10.

RSA 551:10 protects a testator's heirs against unintentional omission from the testator's will. *See* 7 DEGRANDPRE, *supra* § 11.02, at 99. It provides:

> Every child born after the decease of the testator, and every child or issue of a child of the deceased not named or referred to in his will, and who is not a devisee or legatee,

shall be entitled to the same portion of the estate, real and personal, as he would be if the deceased were intestate.

RSA 551:10. The statute creates a rule of law that the omission of a child or issue of a child from a will is accidental "unless there is evidence in the will itself that the omission was intentional." *In re Estate of MacKay*, 121 N.H. 682, 684, 433 A.2d 1289, 1290 (1981) (quotation and emphasis omitted). "[T]he statute . . . is not a limitation on the power to make testamentary dispositions but rather is an attempt to effectuate a testator's presumed intent. It prevents forgetfulness, not disinheritance." *Royce v. Estate of Denby*, 117 N.H. 893, 896, 379 A.2d 1256, 1258 (1977).

Relying on the statute, the petitioners argue that the testator's great-grandchildren were not named or referred to in the testator's will and therefore are entitled to an intestate share of his estate. They contend that the testator's decision to specifically name Neil F. Chicoine, Jr., the father of the petitioning great-grandchildren, in paragraph seven of the will was irrelevant in determining whether they are pretermitted heirs under RSA 551:10. According to the petitioners, testators must name or refer to their children (or in this case, grandchildren) as well as the issue of their children (or in this case, great-grandchildren) in their wills; otherwise any issue not named or referred to is pretermitted. We disagree.

We hold that a testator who specifically names one heir in an effort to disinherit him has "referred to" the issue of that heir for purposes of the statute. *Accord Towne v. Cottrell*, 387 P.2d 576, 578 (Or. 1963); *see In re Barter's Estate*, 25 P. 15, 16 (Cal. 1890); *Matter of Estate of Kane*, 828 P.2d 997, 999 (Okla. Ct. App. 1992). If a testator has a predeceased child who is neither named, referred to, nor a devisee or legatee under the testator's will, then the naming of the next degree of issue in the line of descent will successfully preclude issue more removed from the testator from invoking the statute. On the other hand, where an issue of a child is named, referred to, or a devisee or legatee, but the testator's child is neither named, referred to, nor a devisee or legatee, then the testator's child is pretermitted, provided the child has not predeceased the testator. *See Gage v. Gage*, 29 N.H. 533, 543 (1854). Our holding is supported by our case law, in which we have acknowledged that a testator's reference to an heir "need not be direct" to exclude the heir under RSA 551:10. *See In re Estate of Osgood*, 122 N.H. 961, 964, 453 A.2d 838, 840 (1982); *cf. Gage*, 29 N.H. at 543 (naming of an heir's issue is not sufficient reference to the heir to preclude application of RSA 551:10).

Here, the testator specifically named Neil Chicoine, Jr., the father of the great-grandchildren, in paragraph seven of his will. As a

result, the testator "referred to" the descendant great-grandchildren for purposes of the pretermitted heir statute.

Furthermore, the testator named his daughter, Jo Ann — the grandmother of petitioners Cecilia and Neil — in his will. When a testator's child has been named, referred to, or is a devisee or legatee under the will, the child's issue cannot invoke the statute even if the issue are neither named, referred to, nor devisees or legatees under the will. Accordingly, the testator's great-grandchildren were not pretermitted heirs under RSA 551:10 and were not entitled to collect an intestate share of his estate.

### III. Assets Belonging to Jo Ann Laura's Estate

The final issue on appeal is whether the probate court erred in refusing to segregate from the testator's estate certain assets allegedly belonging to Jo Ann. The probate court, acting on the basis of offers of proof, held that the petitioners failed to prove the testator's estate contained many of the assets, and further held that the petitioners' claim was barred by the doctrine of laches.

We begin by considering the issue of laches. Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights. See State v. Weeks, 134 N.H. 237, 240-41, 590 A.2d 614, 617 (1991). We have previously explained, however, that "[l]aches, unlike limitation, is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced — an inequity founded on some change in the conditions or relations of the property or the parties involved." Healey v. Town of New Durham, 140 N.H. 232, 241, 665 A.2d 360, 368 (1995) (quotation omitted). Accordingly, "laches will constitute a bar to suit only if the delay was unreasonable and prejudicial." Id. (quotation omitted). We will not overturn a trial court's decision to invoke laches unless we find that its decision is unsupported by the evidence or erroneous as a matter of law. Weeks, 134 N.H. at 240, 590 A.2d at 616.

The probate court held that the petitioners slept on their rights by knowingly waiting an unreasonable length of time — more than sixteen years — to file suit. In doing so, the court rejected the petitioners' assertion that the estate should be estopped from raising the defense of laches. The petitioners had argued that the testator promised he would turn over Jo Ann's assets — a promise which the petitioners relied upon to their detriment, making estoppel appropriate. See Healey, 140 N.H. at 239-40, 665 A.2d at 367. The probate court ruled, however, that the petitioners did not rely on the testator's promises. Instead, the court found that the petitioners chose, "for reasons of [their] own," not to file suit against the testator.

A review of the record does not indicate what personal "reasons" the probate court believed motivated the petitioners not to file suit. Importantly, the estate did not dispute that the petitioners relied on the testator's promises. At the same time, however, we cannot conclude as a matter of law that the petitioners' reliance was reasonable. *Id.* at 240, 665 A.2d at 367. Although the petitioners stated that the testator promised to turn over Jo Ann's assets more than once, they failed to indicate when those promises were made. Given this lack of evidence on the question of reliance, we believe that further fact-finding is necessary before this issue can be adequately resolved.

Although the probate court concluded that some of Jo Ann's assets never became part of the testator's estate, we believe that additional fact-finding is necessary on this issue as well. We reach this conclusion for two reasons. First, the court based its ruling on offers of proof which do not clearly demonstrate what happened to Jo Ann's assets. Second, because of the probate court's ruling on the laches issue the court did not, and was not required to, distinguish between the assets that were part of the estate and those that were not. On remand, provided the probate court determines that laches does not bar the petitioners' claim, it should conduct fact-finding adequate to resolve which of Jo Ann's assets, if any, are contained in the testator's estate.

*Affirmed in part; vacated in part; remanded.*

All concurred.