Strafford
No. 2005-441

PREMIER CAPITAL, LLC

v.

NICKOLAS SKALTSIS & a.

Argued: July 19, 2006
Opinion Issued: March 30, 2007

*Law Offices of Randall L. Pratt*, of Portsmouth (*Randall L. Pratt* on the brief and orally), for the plaintiff.

*Law Office of James H. Schulte*, of Dover (*James H. Schulte* on the brief and orally), for the defendants.

BRODERICK, C.J. The defendants, Nickolas and Lorraine Skaltsis, appeal an order of the Superior Court (*Fauver*, J.) entering judgment for the plaintiff, Premier Capital, LLC, on a promissory note in the amount of $703,504.99. They argue that the trial court erred in ruling that: (1) the applicable statute of limitations on the note was twenty years; (2) the plaintiff had standing to bring this action; (3) there was sufficient evidence of the amount due under the note; and (4) the plaintiff's claim was not barred by laches. Following oral argument before this court, the parties were allowed to file supplemental memoranda on or before August 28, 2006, further addressing the statute of limitations issue. We affirm.

I

On March 12, 1990, the defendants executed a promissory note in the amount of $565,000 in favor of First NH Banks, Exeter Banking Company. The note provided for a variable interest rate equal to the Bank of Boston base rate plus 1.50% adjusted daily, and provided for amortization over twenty-five years. The note was secured by first mortgages on 3A Rose Street and 124 Broadway in Dover, together with an assignment of leases and rents on those properties. In 1992, the promissory note and mortgages

were assigned to Hilco Realty Corp., and in 1993 they were further assigned to AMRESCO New Hampshire, Inc.

The defendants defaulted on the note in 1992 and filed unsuccessfully for bankruptcy protection. In December 1993, AMRESCO New Hampshire, Inc. made a demand upon the defendants for the balance then due on the note, which was $659,632.79. Subsequently, AMRESCO New Hampshire, Inc. advertised and conducted a mortgage foreclosure sale in June 1994 on both properties. In March 1996 AMRESCO New Hampshire, Inc. assigned the original promissory note to AMRESCO New Hampshire, L.P. On September 23, 1997, AMRESCO New Hampshire, L.P. assigned the note to Premier Capital, Inc. On September 10, 2003, the plaintiff commenced this action, alleging that it had been assigned the promissory note originally given by the defendants to Exeter Banking Company in March 1990. Following a bench trial, the court entered judgment for the plaintiff in the amount of $703,504.99. This appeal followed.

II

The defendants first argue that the trial court erred in applying the twenty-year statute of limitations under RSA 508:6 (1997) rather than the three-year statute of limitations under RSA 508:4, I (1997). They contend that our decision in *Cross v. Gannett*, 39 N.H. 140 (1859), "squarely holds that once the mortgage has been foreclosed, even if no discharge is recorded, the mortgage is no longer enforceable and no action may be brought on it within the meaning of the statute." The defendants also argue that our recent holding in *Cadle Co. v. Dejadon*, 153 N.H. 376 (2006), is in conflict with *Cross* and should be overruled.

A brief review of the legislative history of RSA 508:6 and our early decisions interpreting that statutory provision is necessary to determine whether the defendants are correct that our decision in *Cadle* effectively overruled *Cross* "without actually citing [it] and without stating why the *Cadle* decision was stating new law."

When New Hampshire's general statute of limitations was first enacted in 1791, "notes secured by mortgages were completely exempt from the statute." *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 538 (1997). In 1842, the statute was amended to provide that "[a]ctions upon notes secured by mortgage, may be brought so long as the plaintiff is entitled to commence any action upon the mortgage." RS 181:6 (1842). "[T]he only change intended by the 1842 revision was that, rather than being completely exempt from the statute of limitations, a mortgage note would thereafter only be exempt for the same amount of time as the mortgage securing it." *Del Norte*, 142 N.H. at 538. Although the statute "has been reenacted a number of times since 1842 ... [t]he only material change is that since

1878, application of the statute has been limited to notes secured by mortgages of real estate." *Id.* at 538-39. The statute, now codified as RSA 508:6, currently provides: "Actions upon notes secured by a mortgage of real estate may be brought so long as the plaintiff is entitled to bring an action upon the mortgage." Read in conjunction with RSA 508:2 (1997), which provides that "[n]o action for the recovery of real estate shall be brought after 20 years from the time the right to recover first accrued," RSA 508:6 "establishes a twenty-year statute of limitations for notes secured by mortgages on real property." *Del Norte*, 142 N.H. at 537.

In *Cross*, we considered the application of RS 181:6. In that case, the maker-obligor gave defendant Gannett promissory notes secured by a mortgage. *Cross*, 39 N.H. at 140. Shortly thereafter, Gannett endorsed the notes and transferred them and the mortgage to Joseph Bell. *Id.* Some years later, Bell sold and delivered the notes and mortgage to the plaintiff, Cross. *Id.* Cross later foreclosed upon the mortgage but was unable to satisfy the balance due on the notes. *Id.* at 140-41. Some fifteen years later Cross sued Gannett on the notes, which had become due more than ten years before commencement of the suit. *Id.* at 141. We held that the action was barred based upon the fact that "[t]he mortgage ... was given to secure the liability of the maker [obligor] [and that Cross' action was] brought on the liability of the endorser." *Id.* at 142. Because the endorser, Gannett, did not give a mortgage to secure his liability, his obligations were not subject to the twenty-year statute of limitations. We noted that the decision left open the question "whether the statute can be construed to mean any thing more than that an action may be brought, on account of any specific liability, upon the note, so long as the plaintiff is entitled to maintain an action upon the mortgage, *as security for the same liability.*" *Id.* at 142-43 (emphasis added). Left unanswered by the *Cross* decision, therefore, was "whether the specific liability, on account of which the right of action on the note is to be considered as extended by [RS 181:6], must not be the same as that which the mortgage is given to secure." *Id.* at 142.

One year later, we cited *Cross* as support for the conclusion that the twenty-year statute of limitations did not apply to parties who did not, themselves, give security for their obligations. *See Savings Bank v. Ladd*, 40 N.H. 459, 471 (1860). In *Savings Bank*, the plaintiff claimed the benefit of the twenty-year statute of limitations for a promissory note signed by seven individuals, including J.T. Cheney and Jesse Ladd. *Id.* at 460. Six days after the note was signed, Cheney's father, who had not signed the note, executed a mortgage of his homestead to the plaintiffs to secure it. *Id.* We held that the twenty-year statute of limitations did not apply to individuals who had no knowledge of the existence of the mortgage. *Id.* at 470-71. We reasoned:

> [U]nless it was the design and intention of the legislature to make all persons who sign a note liable upon it so long as the creditor may bring an action upon any mortgage which has been given him to secure it, whether given by a party to the note or a stranger; whether given at the date of the note or at any time after; and whether given by the consent and with the knowledge of the signer of the note, or without either of them, this defendant cannot be held liable, if he chooses to avail himself of the statute bar; and that such could have been the intention of the legislature we have before seen to be impossible.

*Id.* We found "some views in the opinion in *Cross v. Gannett* . . . which, we think, favor the construction of the statute which we have given it," *id.* at 471, quoting with approval the statement in *Cross* that "'the object of [RS 181:6] is manifestly to make the remedy of the holder of the note, by suit upon it, coextensive with that which he has by action upon the mortgage, for the purpose of making application of the land *pro tanto*, for the payment of the debt secured by it.'" *Id.* at 471 (quoting *Cross*, 39 N.H. at 141).

Four years later, in *Alexander v. Whipple*, 45 N.H. 502 (1864), we relied upon and extended the holding in *Savings Bank* that the statute applies "only to such persons as should sign both the note and the mortgage given to secure it." *Id.* at 503. We rejected the suggestion that under the decision in *Cross*,

> an action may be maintained upon the note so long as the payee may have any available remedy under his mortgage upon the property thus pledged to secure the note; and when such property is destroyed and the security by way of the mortgage is no longer available, that the right of action both upon the note and the mortgage shall be barred in six years.

*Id.* Rather, we held that the statute meant that it "shall not be a bar to any action upon the note until the statute of limitations might be properly pleaded as a bar to any action upon the mortgage given to secure it." *Id.* at 504. Thus:

> If the mortgage were discharged so that no action could be maintained on it, then, by the terms of the act, the statute of limitations would run against the note. If the mortgage had been foreclosed and the note thereby paid, no action could be maintained on either. But if the note remains unpaid by foreclosure of the mortgage or otherwise, and the mortgage is not discharged, an action may be maintained upon the note

> without being barred by the statute, until such time as the statute of limitations might be properly pleaded to any action upon the mortgage.

*Id.* at 505.

■ In *Cadle*, we noted that we have "consistently interpreted [RSA 508:2 and 508:6] to mean that only upon performance of the conditions of a mortgage is it rendered void and a discharge compelled by the mortgagee." *Cadle*, 153 N.H. at 379. "[A]bsent full payment of a note or an express discharge of the mortgage by the mortgagee, merely foreclosing upon the mortgage cannot void or discharge it by operation of law." *Id.*

■ Unlike *Cross*, in the case before us, as in *Cadle*, the defendants both made the note and gave the mortgages to secure it. Thus, under an unwavering line of decisions from this court, "although the mortgagee no longer has recourse to the property once it has been sold free and clear at a foreclosure sale, he may still assert, in an action against his debtor (the mortgagor), that where the covenants of the mortgage given to secure the note remain undischarged, the debtor waived the right to plead the statute of limitations for twenty years." *Del Norte*, 142 N.H. at 539-40. Accordingly, we hold that *Cross* is not in conflict with *Cadle* and that the trial court correctly concluded that the "action was clearly brought within 20 years of the defendants' default, and is therefore not barred by the statute of limitations."

## III

■ The defendants next argue that the trial court's ruling that the plaintiff had standing to bring this action on the note was not supported by the evidence. "No particular phraseology is required to effect an assignment." *In re Dodge-Freedman Poultry Company*, 148 F. Supp. 647, 650 (D.N.H. 1956) (quotation omitted). "The ultimate test is the intention of the assignor to give and the assignee to receive present ownership of the claim." *Id.* at 650-51 (quotation omitted). "A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim." *Cosmopolitan Trust Co. v. Leonard Watch Co.*, 143 N.E. 827, 829 (Mass. 1924). "The important thing is the act and the evidence of intent; formalities are not material." *Id.* Thus, "[w]hether or not an assignment occurred is a question of fact for the trial court." *Gold'n Plump Poultry, Inc. v. Simmons Eng. Co.*, 805 F.2d 1312, 1316 (8th Cir. 1986).

John Cummings, an account manager at plaintiff Premier Capital LLC, testified that the defendants' file was given to him by an authorized

representative of Premier Capital, Inc. with the intent that it be transferred to Premier Capital, LLC. The trial court found:

> Cummings credibly testified that a representative from Premier Inc. gave him the defendants' file and told him to enforce it on behalf of Premier LLC. The physical transfer was conducted with the intent to give Cummings, as an agent of Premier LLC, the right to enforce the note. As such, the transfer from Premier Inc. to Premier LLC was a valid transfer and vested Premier LLC with Premier Inc.'s right to enforce the note. Therefore, Premier LLC has standing to bring this action.

We affirm the trial court's factual findings as they are supported by the record before us. *See In the Matter of Hampers &. Hampers*, 154 N.H. 275, 279 (2006).

The defendants also contend that the plaintiff does not have standing because the note was not a negotiable instrument and, thus, it could only be conveyed by an assignment for value for which there was no evidence. We reject this argument, however, because it is not "necessary that there should be any consideration where the question arises between the assignee and the debtor." *Cosmopolitan Trust*, 143 N.E. at 829.

## IV

The defendants next argue that the trial court erred by ruling that there was sufficient evidence of the amount due under the note and that insufficient funds were generated from the foreclosure sale. They also contend that the evidence submitted to prove the amount of the deficiency owed was insufficient.

"On review, we consider the evidence in the light most favorable to the prevailing party below and will overturn a damage award only if we find it to be clearly erroneous." *Touma v. St. Mary's Bank*, 142 N.H. 762, 766 (1998) (quotation and brackets omitted). As to the foreclosure sale, a mortgagee "must exert every reasonable effort to obtain a fair and reasonable price under the circumstances." *Murphy v. Financial Development Corp.*, 126 N.H. 536, 541 (1985) (quotation omitted). "What constitutes a fair price, or whether the mortgagee must establish an upset price, adjourn the sale, or make other reasonable efforts to assure a fair price, depends upon the circumstances of each case." *Id.* "Inadequacy of price alone is not sufficient to demonstrate bad faith unless the price is so low as to shock the judicial conscience." *Id.*

■ The 1994 tax assessments for the properties were $154,600 for the Rose Street property and $313,200 for the Broadway property. Cummings testified that he believed the fair value on the properties was $80,000 for Rose Street and $170,000 for Broadway. The foreclosure sale brought $51,000 for Rose Street and $190,000 for Broadway. The trial court found that although the prices realized at auction were significantly below the tax assessment values of the properties, the properties carried significant tax burdens for the years the defendants did not pay their taxes, thus making them less valuable to potential buyers. In addition, the court found that there was evidence that "there may have been a glut in the property market at the time of the foreclosure sale." Finally, the court found that the defendants had approximately one year between the withdrawal of their bankruptcy petition and the foreclosure, during which time they made no payments and no effort to sell the property. As the court stated in its order:

> Being relatively sophisticated real estate investors, the defendants surely would have sold the properties had they been able to secure a high enough price on the properties to satisfy a large portion of the outstanding mortgage. No steps to find a buyer were taken until after Ameresco [*sic*] foreclosed on the property. The court can reasonably infer that the defendants did not sell the properties because they could not obtain as high a selling price as they would need to satisfy their mortgage obligations.

We hold that the record supports the trial court's finding that the foreclosure sale obtained a reasonable price under the circumstances and that the price was not so low as to support a finding of bad faith.

As to the amount of the deficiency owed, the record likewise supports the trial court's findings. Although Cummings did not use the Bank of Boston interest rate specified in the note to calculate the amount owed, he testified "that the Federal Reserve prime rate was equal to the Bank of Boston base rate at times when the Bank of Boston base rate was available [and] that the Federal Reserve prime rate is a reliable and accurate measure to use for the time period the Bank of Boston rate was unavailable that is, when Bank of Boston was ultimately consumed by another bank." *Cf. F.D.I.C. v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (where the interest rate on a note is determined by reference to the prime rate of a failed institution, it is reasonable to compute interest based on an alternative prime rate selected by FDIC). Furthermore, as the trial court noted, the plaintiff's evidence of the defendants' payment history was "essentially uncontroverted by the defendants."

## V

The defendants' final argument is that the trial court erred by ruling that the plaintiff was not guilty of laches. The defendants assert that they destroyed all of their records relating to the note at issue based upon their belief that any actions under the note would be barred by the statute of limitations. They argue that they have been prejudiced by the plaintiff's delay in bringing this action and should therefore not be obligated to pay the debt.

"Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." *In re Estate of Laura*, 141 N.H. 628, 635 (1997). "Laches . . . is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced—an inequity founded on some change in the conditions or relations of the property or the parties involved." *Id.* (quotation omitted). When the delay in bringing the suit is less than the applicable statute of limitation period, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial. *Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 710 (1984). "In determining whether the doctrine should apply to bar a suit, the court should consider the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *Miner v. A & C Tire Co.*, 146 N.H. 631, 633 (2001) (quotation omitted). "[T]he trial court has broad discretion in deciding whether the circumstances justify its application," *id.*, and "[u]nless we find that the trial court's decision is unsupported by the evidence or erroneous as a matter of law, we will not overturn it," *id.*

The trial court stated in its ruling:

> The defendants' destruction of their financial records relating to this note between the foreclosure and the commencement of this action was not reasonable because it was based upon an inaccurate interpretation of the law and does not amount to sufficient prejudice. The defendants are not unsophisticated, they were savvy real estate purchasers and sellers, and operated their business running considerable lines of credit and transferring large amounts of real estate. Additionally, Skaltsis testified he and his wife ceased making payments on this note because they no longer wanted to maintain control of the properties. The defendants consciously defaulted on the note, hoping the foreclosure would absolve them of their responsibilities under the note. As such, any prejudice resulting from the defendants' destruction of the records relating to this note is purely the

defendants' own fault and the court will not impose the equitable doctrine of laches to discharge their obligation to pay on this note.

We find no error.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.