ABBIE C. STANLEY, *Adm'x,* v. SARAH F. KIMBALL & a., *Ex'rs.*

Where the evidence establishes a definite contract to pay in property for services rendered, the promisor is liable for its breach though the method of transference of the property is not agreed upon therein; and where such contract is to care for the promisor during life, a right to compensation is not necessarily defeated by the death of the promisee before that of the promisor.

In such case, the question of the existence or non-existence of an understanding by the parties as to compensation for part performance is one of fact; and in the absence of any finding of such understanding there may be recovery for part performance.

The fact of relationship between the parties does not prevent their contracting as strangers might; and when there is proof they have done so, the equitable rule of compensation for part performance applies.

ASSUMPSIT, for services rendered by the plaintiff's intestate, Annie Cushing, as housekeeper, companion and nurse for her aunt, Sarah

Metcalf, the defendants' testatrix, for the period of nineteen years. The defendants' motions for a nonsuit and directed verdict were denied subject to exception. Trial by jury and verdict for the plaintiff before *Marble*, J., who transferred the case upon the above exceptions from the February term, 1921, of the superior court. The facts appear in the opinion.

*Snow & Cooper (Mr. Snow* orally), for the plaintiff.

*William Wright* and *Hughes & Doe (Mr. Doe* orally), for the defendants.

PEASLEE, J. The evidence is clearly sufficient to warrant a finding that there was a contract for compensation to be made in the form of property to go to the niece at the aunt's death. It could be found that this contract was to be performed by the aunt's making a will in Annie's favor, or that there was to be a provision for the future support of Annie. If the agreement was either of those suggested, there can be no recovery here. Annie's death before her aunt's made it impossible for Annie to take under the aunt's will, or to call for support after the aunt's death. If however the agreement was merely one for property, without specification as to how Annie was to take it, then the contract obligation was not terminated by the mere fact that Annie died first. Such a claim would become a part of her estate.

The evidence of what the contract was consists largely of statements made by the aunt. In some of these there is reference to a will, in some the suggestion of a gift, and in some that Annie was to have a house and enough to run it — no specification being made of how title was to be transferred. In addition to this, one witness testified that when Annie objected to the aunt's giving away property "Aunt Sarah then promised her again the house that she lived in and enough to run it." Upon cross-examination he testified that Annie wanted the aunt to make a will, but later being pressed for further testimony to the same effect, he said: "I don't remember that she said she wanted her to make a will, but the general conversation was, Aunt Sarah had given away her property and she wanted some assurance that she was going to have what was left."

The criticism of verdicts founded upon evidence of casual statements by the deceased promisor to the effect that the promisee was to be paid, or was to have the promisor's property, do not apply

to this situation. The evidence above quoted relates to the actual negotiations between the parties and, if believed, tends to prove an express contract, by the terms of which a specified compensation was to be made.

It could be found from this evidence that there was a definite contract for payment in property, and that the method by which it was to be transferred was not agreed upon. If a will which could take effect as written would be a performance of such a contract, it is also true that a transfer made in any other way would satisfy the obligation. Upon the other hand, a will which was ineffective to transfer title, for any reason, would not be a fulfilment of the contract; nor would the fact that a will naming Annie as legatee would be invalid because of her previous death relieve the aunt or her estate from performance in some other way.

Upon the defendants' contention, it would follow that if Annie had fully performed her part of the contract and had died a moment before her aunt, all right to compensation would have been lost. It is not likely that the parties would so agree, unless the compact was solely for the creation of the relation of ancestor and heir. While upon the evidence such a finding would be well supported, yet there is sufficient evidence that there was rather a contract for compensation in the ordinary sense of that term.

It could be found that the parties intended that Annie should be compensated for her services for her aunt, that they had no intention upon the question whether compensation should depend upon full performance by Annie, that the contract was terminated without her fault, that part performance by her had theretofore been accepted by the aunt with knowledge that it could not be returned and that the consideration promised was a house and enough to run it. Upon these facts, applying the law as laid down in *Anderson* v. *Shattuck,* 76 N. H. 240, and cases cited, the plaintiff would be entitled to a verdict for such part of the full compensation (the value of the house and enough to run it) as the service performed was of the whole service necessary to full performance.

The fact that full performance by Annie might have proved to be either a trifling matter or one of great magnitude is now largely immaterial. The death of the aunt has definitely settled its limit. It is true that its uncertainty when the agreement was made tends to support the conclusion that there was an agreement to create the relation of ancestor and heir, but upon the whole evidence it is not conclusive on that question.

The argument of the court in the Michigan case relied upon by the defendants (*More* v. *Luther,* 153 Mich. 206) is to the effect that the parties intended and understood that there was not to be any compensation for part performance. Upon such a finding, the legal conclusion of no liability would be adopted here. *Dame* v. *Woods,* 73 N. H. 222, 223. But the question of the existence or non-existence of such understanding is one of fact. So in this case, it is to be presumed that the jury were instructed that if the parties understood, and in effect agreed that there should be no compensation except for full performance, there could be no recovery.

Whether the conclusion in the Michigan case that an agreement for no compensation under the circumstances must be found from the evidence in that case is well grounded, need not be considered. The facts here are very different. In that case the property promised appeared to be all the promisors had to look to for support in their declining years. In this case it was only a part of the property of the promisor.

So far as that case depends upon the proposition that in the absence of any intent upon the subject there can be no recovery for part performance, it is contrary to the cases in this state, and is not an authority here.

It is not important whether the obligation to make compensation in cases like this is called *quasi* contract or some other appropriate designation. The important thing is that the law of this state is that in such a situation there is a right to compensation and a duty to pay. Whether this is thought to be founded upon a more or less fanciful understanding imputed to the parties (*Britton* v. *Turner,* 6 N. H. 481), or whether it is an obligation imposed in the absence of intent of the parties in this particular (*Dame* y. *Woods, supra*), is not the controlling factor. It is a liability growing out of a certain contract relation, and that as matter of law.

The argument advanced that an agreement is a contract merely because it is so in fact cannot be sustained. It is the agreement plus the law that makes the ordinary contract an enforceable obligation. *Steinfield* v. *Insurance Co., ante,* 39. It is for the breach of such legal obligation, or duty, that the action of assumpsit is brought. *Frye* v. *Hubbell,* 74 N. H. 358, 374. But an agreement to make a gift creates no legal duty to perform the promise, and no action can be maintained for breach of the promise. The agreement in such a case is not vitalized by a rule of law imposing a duty, and the promise in fact is a mere nullity in law.

The idea that liability upon an express contract rests solely upon the consent of the parties, while liability for negligence arises solely by operation of law, fails to take account of all the factors involved in the respective instances.   The parties who so agree are bound by their act of agreement because the law imposes a duty upon those so circumstanced, and an action is maintainable for a breach of that duty.   And so in the suit for negligence, the defendant must be shown to have owed a duty to use care, and to have failed to perform it.   It is the conduct of the parties, plus the law, that imposes the ultimate duty to pay in each instance.

It is true, in certain respects, as the defendants argue, that the law does not attempt to establish a contract between individuals. It leaves them to enter upon the relation or not as they choose.   But this is equally true of relations out of which tort liability grows. If there is no relation there is no duty.   I owe no duty to the unknown trespasser.   *Garland* v. *Railroad*, 76 N. H. 556.   Yet if I learn of his presence, or if I make an agreement with my neighbor, the law, in each instance, imposes certain liabilities upon me because of the relation I have entered upon.   In the supposed cases for the newsboy, who sells me a paper and also trips over my extended foot, he must alike in the suit in assumpsit and the one in case establish my relation to him and a breach of the legal duty which the law imposes upon one so situated.   In each instance the law not only enforces the liability — it first declares it.

The determination of what situations shall impose a liability to pay for benefits received, or to compensate for loss suffered, is largely a matter of degree.   Arguments are not wanting to sustain either side of any proposition upon the subject.   But this does not prove that the question of liability is always one of fact.   The law is not that parties are liable merely because the trier of fact finds that they ought to be.   It imposes certain obligations because of certain relations, and this is as true of relations created by verbal acts as of those arising in other ways.

The real reason behind the rule of law that there can be a recovery in such a case as this is its "fundamental justice and reasonableness" (*Cavanaugh* v. *Railroad*, 76 N. H. 68, 72).   *Horn* v. *Batchelder*, 41 N. H. 86.   Attempts have been made to justify it as a part of the understanding of those who made the contract and thus created the relation out of which the liability grows.   This may furnish a sufficient ground, when it exists.   It is evident that if it is a part of the agreement, it is.   But in the great majority of cases

there is no evidence to warrant such finding of fact. In such cases the idea of unjust enrichment — the inequity of the situation — has undoubtedly furnished a sufficient foundation for the conclusion that the law should be as it is. Upon whatever philosophy the rule is based, it appears to be just, it is well established, both here and elsewhere, and should not be abandoned.

The argument that this principle ought not to be applied in actions by relatives to recover for support furnished, assumes that in all such cases there is an agreement for the creation of the relation of ancestor and heir, or that the services are gratuitous. When such an agreement exists, the recovery is limited, as stated earlier in this opinion. But there is nothing in the fact of relationship between the parties to prevent their contracting as strangers might; and when there is proof that they have done so, no sufficient reason appears for denying the application of the equitable rule which prevails in this jurisdiction.

*Exceptions overruled.*

PLUMMER, J., was absent: SNOW, J., did not sit: the others concurred.