Strafford
No. 2005-591

IN THE MATTER OF STEVEN L. FULTON AND NANCY B. FULTON

Argued: September 12, 2006
Opinion Issued: October 31, 2006

*Steven L. Fulton, pro se,* and *Mark S. Moeller, P.A.,* of Dover (*Mr. Fulton* on the brief, and *Mark S. Moeller,* orally) for the petitioner.

*Flagg Law, PLLC,* of Portsmouth (*Jonathan M. Flagg* on the brief and orally), for the respondent.

GALWAY, J. The respondent, Nancy B. Fulton, appeals an order of the Superior Court (*Fauver,* J.), approving the recommendations of the Marital Master (*Barber,* M.), alleging numerous errors relative to the custody, visitation and support of the parties' minor children. We affirm in part, vacate in part and remand.

The record supports the following. The parties were divorced in 2002. At the time of the divorce and presently, the respondent was not employed. At the time of the divorce, the petitioner, Steven L. Fulton, was employed by the University of New Hampshire. In 2004, the petitioner's position was eliminated so he sought and obtained a new position in Boston. In so doing, he nearly doubled his salary. In January 2005, the respondent sought to modify the petitioner's child support obligation. She contended that the petitioner's increased salary, and the fact that one of the parties' three children had reached the age of majority, were substantial changes sufficient to warrant modification. RSA 458-C:7, I (2004). Further, the respondent requested that, pursuant to an alleged agreement of the parties' attorneys, any new support order should be made retroactive to March 22, 2004, the date upon which the petitioner's new job commenced. In response, the petitioner filed a cross-petition for modification of his child support obligation based upon his increased commuting costs and the respondent's changed financial situation. He also sought a modification to the parties' visitation schedule.

Following a hearing on the parties' petitions in May 2005, the trial court increased the petitioner's support obligation. When computing the petitioner's new support obligation, the trial court found that, despite being unemployed, the "Respondent's financial circumstances demonstrate that Respondent receives regular funds from some source that she uses to support herself." Also, the trial court found that "the money Respondent receives that allows her to live as comfortably as she does is includable as income to her for the purposes of calculating child support." The trial court thus "allocated income of $2,750.00 a month to Respondent" in order to

determine the petitioner's support obligation. The trial court declined to make the increased support award retroactive to March 22, 2004, because it found that there was no agreement between the parties' attorneys. The trial court also reduced the petitioner's support obligation to reflect his increased commuting costs and modified the parties' visitation schedule to accommodate the petitioner's increased commuting time. The respondent moved for reconsideration, which the trial court denied.

On appeal, the respondent argues that the trial court erred by: (1) imputing, as income to her, gifts from her family; (2) crediting the petitioner for his increased commuting costs without any supporting evidence or offers of proof; (3) failing to make the new child support order retroactive to March 22, 2004; (4) modifying the parties' visitation schedule without the input of a guardian ad litem (GAL); and (5) not including the petitioner's bonus in his income when computing his child support obligation. We address each issue in turn.

█ The respondent first argues that the trial court erred as a matter of law in holding that gifts from the respondent's family constitute income under RSA 458-C:2, IV (2004) for the purpose of calculating the petitioner's child support obligation. Resolution of this issue requires that we interpret RSA 458-C:2, IV, which defines gross income for child support purposes. "We review the trial court's statutory interpretation *de novo*." *In the Matter of Giacomini & Giacomini*, 151 N.H. 775, 776 (2005). "We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *Id.* "We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used." *Id.* "When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute." *Id.* at 776-77.

RSA 458-C:2, IV defines gross income for child support purposes as:

all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs ... including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits ....

We have previously held that the use of the phrase "including, but not limited to" in a statute limits the application of that statute to the types of items therein particularized. *Roberts v. General Motors Corp.*, 138 N.H. 532, 538 (1994); *see also Conservation Law Found. v. N.H. Wetlands Council*, 150 N.H. 1, 5-6 (2003) (applying same reasoning to the term "including"). RSA 458-C:2, IV describes types of income that share two essential characteristics. First, all of the items listed involve payments in the form of money. RSA 458-C:2, IV does not include any items that, although they may carry value, are not monetary. For example, it does not include real or personal property, nor benefits such as health insurance or employer contributions to a retirement plan.

Second, the items listed in RSA 458-C:2, IV are all things to which the recipient, generally speaking, has a legally enforceable right and which the provider has a legal obligation to give; in other words, items that, if withheld, may be obtained by resort to judicial compulsion. The wage earner, lottery winner, trust beneficiary and alimony recipient all have a legal right to the funds due them and the payers have an obligation to provide them.

Applying the above characteristics, we hold that gifts are not included in the definition of gross income in RSA 458-C:2, IV. While many gifts may be monetary, they do not confer upon their recipients the legal right to obtain them nor do the providers have any obligation to give them. *See Stanley v. Kimball*, 80 N.H. 431, 434 (1922) ("[A]n agreement to make a gift creates no legal duty to perform the promise, and no action can be maintained for breach of the promise."). Therefore, we find that gifts are not of the same type as those items included in RSA 458-C:2, IV, and are thus excluded from the definition of gross income.

Furthermore, our plain language analysis is supported by sound public policy in that if the statute is read to include monetary gifts, then all monetary gifts, no matter their size or frequency would be included. To require parties to account for all gifts, no matter how minute or sporadic, would be, in many cases, onerous and may tempt many parties to disguise gifts as loans or some other form of payment in order to avoid inclusion. Moreover, to require that gifts be included only if they are regular, dependable, of a minimum amount, or fit some other potential standard, would be to read into the statute not only the requirement that gifts should be included, but also the standards for determining which gifts are appropriately included and which are not. Such broad changes to the wording of the statute are not for the courts to make.

Lastly, it takes no great imagination to envisage a situation where an obligor is either unwilling or unable to meet a standing support obligation

and parents, other relatives, or friends of an obligee give the money necessary to maintain a particular lifestyle. To include gifts in gross income would require that all such gifts be counted in the obligee's income, which would result in a corresponding reduction in the obligor's responsibilities. This requirement could discourage the giving of gifts and thereby, potentially, endanger the welfare of the children. We do not read the statute to mandate an outcome so in conflict with the stated purpose of the child support guidelines—to minimize the economic consequences to children of the termination of their parent's relationships. *See* RSA 458-C:1 (2004 & Supp. 2005). For all of these reasons, we hold that gifts are not included in the definition of gross income in RSA 458-C:2, IV.

We note that several other jurisdictions, which have child support statutes that do not specifically include gifts, have also concluded that gifts do not constitute income for child support purposes. *See, e.g., True v. True,* 615 A.2d 252, 253 (Me. 1992); *Triggs v. Triggs,* 920 P.2d 653, 660-61 (Wyo. 1996); *Nass v. Seaton,* 904 P.2d 412, 415-16 (Alaska 1995); *Styka v. Styka,* 972 P.2d 16, 21 (N.M. Ct. App. 1998).

■ This is not to say, however, that the receipt of gifts may not be relevant to the computation of a child support award. RSA 458-C:5 (Supp. 2005) permits the trial court the discretion to deviate from the child support guidelines when a party's special circumstances make a deviation appropriate. Thus, the trial courts may consider the impact of gifts on the financial condition of the parties and determine, for example, whether including or excluding the gifts would result in an unreasonably low or confiscatory support order, taking all relevant circumstances into consideration. RSA 458-C:5, I(j); *see also Nass,* 904 P.2d at 416 n.8 (noting that trial court may consider gifts if excluding them would result in manifest injustice). We believe that the statute is sufficiently flexible to address the issue of gifts under the special circumstances standard provided in RSA 458-C:5 and that a strict, bright-line rule is neither necessary nor advisable. "Of course, if the legislature disagrees with our construction of its statutory scheme, it is free to amend the statutes as it sees fit." *Marceau v. Concord Heritage Life Ins. Co.,* 149 N.H. 216, 221 (2003).

■ Here, the trial court allocated $2,750.00 in monthly income to the respondent based upon her regular receipt of substantial funds from an unknown source. As we have held that gifts are not income as defined in RSA 458-C:2, IV, the trial court's ruling was erroneous as a matter of law. Therefore, we vacate the child support award and remand for a recalculation of the petitioner's child support obligation in accordance with this opinion.

■ The respondent next contends that the trial court erred in crediting the petitioner for his increased commuting costs without any supporting evidence or offers of proof. We disagree. "Trial courts have broad discretion in reviewing and modifying child support orders." *In the Matter of Jerome & Jerome*, 150 N.H. 626, 628 (2004). "Because trial courts are in the best position to determine the parties' respective needs and their respective abilities to meet them, we will overturn modification orders only if it clearly appears that the trial court engaged in an unsustainable exercise of discretion." *Id.* (quotation omitted).

■ The record shows that during the May 2005 hearing, the petitioner's attorney represented to the trial court that the petitioner's commuting costs had increased substantially since being employed in Boston, and informed the trial court of the amounts by which his costs had increased. The respondent never challenged the representations, nor offered any evidence that they were improper or unreasonable. "Under RSA 458-C:4-:5, the master can adjust the support award, either upward or downward, when the master makes a specific finding that the guidelines should not be followed." *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 508 (1993). Here, the trial court had uncontroverted evidence of the petitioner's costs and, in the exercise of its discretion, made a specific finding that the costs amounted to special circumstances under RSA 458-C:5 sufficient to adjust the petitioner's obligation downward. We find no error in the trial court's exercise of discretion here.

Next, the respondent contends that the trial court erred in failing to make the new child support order retroactive to March 22, 2004, pursuant to an agreement of the parties' attorneys. According to the respondent, despite the terms of RSA 458-C:7, II (2004), which states that a child support modification is not effective prior to the date that notice of the petition for modification is given to the responding party, litigants can agree to make the order retroactive to a date prior to the date of notice.

■ The trial court's determination whether a binding settlement agreement exists is a question of fact. *Byblos Corp. v. Salem Farm Realty Trust*, 141 N.H. 726, 728-29 (1997). Absent an error of law, we will affirm the trial court's ruling if it is supported by the evidence. *Id.* at 729. Here, the trial court found that the petitioner made an offer regarding child support, but that the offer was never accepted and that no consideration was exchanged. The trial court's factual conclusions regarding the lack of acceptance and consideration are supported by evidence in the record and, accordingly, we will not overturn them. Because the trial court concluded that the parties did not have an enforceable agreement, we need not

determine whether parties have the authority to make an agreement contrary to the terms of RSA 458-C:7, II.

The respondent next argues that the trial court erred in failing to obtain the input of a GAL before modifying the parties' custody and visitation schedule. As stated, we will overturn modification orders only if it clearly appears that the trial court engaged in an unsustainable exercise of discretion. *Jerome*, 150 N.H. at 628. However, we review the trial court's statutory interpretation *de novo*. *Giacomini*, 151 N.H. at 776. At the time of the May 2005 hearing, RSA 464-A:41, I (2004) (amended 2005), stated:

> When *before or during the hearing on any proceeding* in any court it appears to the court that the interest or rights of a minor or a legally incapacitated person are not fully represented, the court may, and upon the request of any interested person shall, appoint a competent and disinterested person to act as guardian ad litem for such minor or legally incapacitated person and to represent such person's interest in the case.

(Emphasis added.) Prior to the May 2005 hearing, the only indication that a GAL would be needed was the petitioner's statement in his answer to the respondent's motion to bring forward and modify that, if the trial court felt the need for a GAL, one should be appointed. During the May 2005 hearing, the respondent's attorney stated that a GAL was not needed and that one should not be appointed. The trial court agreed and, accordingly, did not appoint one. Only after the May 2005 hearing did the respondent request the appointment of a GAL.

Prior to its amendment in 2005, RSA 464-A:41, I, mandated the appointment of a GAL only if one was requested prior to or during a hearing. Here, neither party requested a GAL prior to or during the hearing and, in fact, the respondent's attorney represented to the trial court during the hearing that a GAL was neither necessary nor desirable. Accordingly, the trial court was not required by the statute to appoint a GAL and we find no error in its decision not to do so. *See also* RSA 458:17-a, I (2004) (repealed 2005) (GAL may be appointed to continue to represent interests of children after divorce is granted).

Finally, the respondent argues that the trial court erred by not including the petitioner's bonus pay when calculating his child support obligation. Because the matter is being remanded for a new determination of the petitioner's support obligation in light of our holding above, and

because the record is not clear, the respondent may on remand, address the effect of the petitioner's bonus pay on his child support obligation.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.