Salem Family Division
No. 2005-531

IN THE MATTER OF SUSAN CLARK AND NATHAN CLARK

Argued: September 12, 2006
Opinion Issued: November 29, 2006

*Tarbell Professional Association*, of Concord (*Friedrich K. Moeckel* on the brief and orally), for the petitioner.

Nathan D. Clark, by brief and orally, *pro se*.

GALWAY, J. The petitioner, Susan Clark, appeals an order of the Salem Family Division (*DalPra*, M.) declining to modify the child support obligation of the respondent, Nathan Clark. Additionally, the petitioner argues that the trial court erred in failing to hold the respondent in contempt for withholding alimony and in failing to recalculate the respondent's child support obligation to comport with the requirements of RSA chapter 458-C (2004 & Supp. 2005). We affirm in part and remand.

The following facts appear in the record. The parties were divorced on February 23, 2004. A permanent stipulation drafted by the parties was incorporated into the divorce decree. Under the terms of the stipulation, the respondent was obligated to pay $267 per week in child support and $113 per week in alimony for two years.

On September 3, 2004, the petitioner requested the trial court to change the parties' visitation schedule and the amount of the respondent's child support obligation. She contended that the child support order should be amended because she had become aware that the support obligation was erroneously calculated, resulting in the respondent paying less than required by the guidelines. That same day, the petitioner also filed a petition for contempt alleging that the respondent improperly withheld $84.50 of her alimony because of a dispute over insurance. As a result of numerous continuances, the matter was not heard until May 2005. Prior to that hearing, the petitioner filed a second petition for contempt alleging that the respondent: (1) was six months in arrears on his alimony payments; (2) had not provided proof of life insurance; and (3) had not provided copies of certain tax forms.

At the May 2005 hearing on the petitioner's pleadings, the respondent repaid the $84.50 in disputed alimony, with interest, produced proof of life insurance and the requested tax forms and represented that the parties' dispute over visitation had been resolved. The parties only briefly mentioned, but presented no evidence regarding, the petitioner's contention that the respondent was six months in arrears on his alimony payments. The remainder of the hearing focused upon the petitioner's recent discovery that the respondent was residing in his employer's home, while paying only a nominal rent, was permitted personal use of a vehicle belonging to his employer and received other benefits. The petitioner argued that the respondent's "gross income" ought to be adjusted to reflect the value of these benefits and that a corresponding adjustment to the child support amount should be made.

Following the hearing, the trial court issued an order finding that although the respondent's tax status might be affected by his receipt of fringe or in-kind benefits, the benefits were not "gross income" as defined in RSA 458-C:2, IV, and that his support obligation should not, therefore, be increased. Additionally, the trial court found that the respondent was not in contempt, but made no other findings or rulings regarding child support.

On appeal, the petitioner argues that the trial court erred by failing to: (1) include the respondent's in-kind benefits as gross income for child support purposes; (2) rule and make findings upon her motion for contempt regarding unpaid alimony; and (3) recalculate child support in light of the original erroneous calculation. We address each issue in turn.

■ The petitioner first argues that the respondent's receipt of in-kind benefits constituted "gross income" under RSA 458-C:2, IV, for the purpose of calculating his child support obligation. Resolution of this issue requires that we interpret RSA 458-C:2, IV. "We review the trial court's statutory interpretation *de novo.*" *In the Matter of Giacomini & Giacomini,* 151 N.H. 775, 776 (2005). "We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *Id.* "We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used." *Id.* "When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute." *Id.* at 776-77.

RSA 458-C:2, IV defines "gross income" for child support purposes as:

> all income from any source, whether earned or unearned, including but not limited to, wages, salary, commissions, tips,

annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs ... including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits ....

When the legislature uses the phrase "including, but not limited to" in a statute, the application of that statute is limited to the types of items therein particularized. *Roberts v. General Motors Corp.*, 138 N.H. 532, 538 (1994); *see also Conservation Law Found. v. N.H. Wetlands Council*, 150 N.H. 1, 5-6 (2003) (applying same reasoning to the term "including").

We recently held in *In the Matter of Fulton & Fulton*, 154 N.H. 264, 267 (2006), that the items particularized in RSA 458-C:2, IV share two characteristics. First, they are payable in money, and second, they are things that, as a general matter, the recipient has a legal right to obtain and which the provider has a legal obligation to give. *Id.* In *Fulton*, we held that gifts do not constitute "gross income" under RSA 458-C:2, IV because, unlike the other items listed, the recipient has no legal right to them. *Id.*; *see also Stanley v. Kimball*, 80 N.H. 431, 434 (1922) ("[A]n agreement to make a gift creates no legal duty to perform the promise, and no action can be maintained for breach of the promise.").

Here, the petitioner contends that the respondent's employer-provided housing, vehicle and other benefits constitute "gross income." Initially, we note that the respondent took up residence with his employer prior to the time of his employment and his housing situation, including the amount of rent, was not affected by his subsequent employment. As such, it is not clear that the benefits provided the respondent are employer-provided in-kind benefits. Irrespective of whether the benefits are employer-provided, we hold, as we did in *Fulton*, that the items at issue are not "gross income" as defined in RSA 458-C:2, IV.

█ A plain reading of the statute discloses that the benefits the respondent receives are not of the same type as those in RSA 458-C:2, IV. The respondent's benefits are not paid in money. Thus, the benefits received by the respondent do not share one of the primary attributes of the items listed in RSA 458-C:2, IV, and are not, therefore, of the same type as those items. Accordingly, we hold that in-kind benefits are not includable in "gross income" as defined in RSA 458-C:2, IV.

█ As we cautioned in *Fulton*, however, merely because we hold that the items at issue are not included as "gross income" under RSA 458-C:2,

IV, does not mean that they can never be included in a child support award calculation. *Fulton*, 154 N.H. at 268. RSA 458-C:5 gives the trial court discretion to deviate from the child support guidelines when a party's special circumstances make a deviation appropriate. *Id.* In an appropriate situation, the trial court could deviate from the guidelines if a party's receipt of benefits were so substantial that ignoring the value they confer would result in an unreasonably low support order, taking all relevant circumstances into consideration. RSA 458-C:5, I(j); *see also* PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 3.13 comment a (Am. Law Inst. 2002) (problematic forms of income, such as in-kind benefits, may be included in child support calculation at the discretion of the court). Thus, we believe it proper under the statutory scheme to leave the inclusion of in-kind benefits to the discretion of the trial court under RSA 458-C:5. If the legislature determines that in-kind benefits should be considered "gross income" under RSA 458-C:2, IV, it is, of course, free to amend the statute. *See Marceau v. Concord Heritage Life Ins. Co.*, 149 N.H. 216, 221 (2003).

The petitioner points to cases from other jurisdictions in support of the conclusion that free or low-cost housing, or other in-kind benefits, when provided by an employer, are to be counted in computations of "gross income" for child support purposes. The child support guidelines at issue in the cases cited by the petitioner, however, unlike RSA 458-C:2, IV, specifically mention in-kind benefits when defining "gross income" for child support purposes. *Styka v. Styka*, 972 P.2d 16 (N.M. 1999) (reviewing N.M. Stat. Ann. §40-4-11.1 (1995)); *Roberts v. Roberts*, 677 So. 2d 1042 (La. Ct. App. 1996) (reviewing La. Rev. Stat. Ann. § 9:315 (West 1991)); *Bemis v. Bemis*, 305 A.D.2d 739 (N.Y. App. Div. 2003) (reviewing N.Y. Dom. Rel. Law § 240 [1-b] [b] [5] (1999 & Supp. 2002)); *Crowe v. Fong*, 701 N.E.2d 359 (Mass. App. Ct. 1998) (reviewing Mass. Child Support Guidelines, Guideline I-A). Also, we note that several other states' guidelines specifically include fringe or in-kind benefits in the definition of "gross income" for child support purposes. *See, e.g.*, Me. Rev. Stat. Ann. tit. 19A § 2001 (5)(B) (West 1998 & Supp. 2005); Vt. Stat. Ann. tit. 15 § 653 (5)(A)(ii) (2002 & Supp. 2005); Regs. Conn. State Agencies § 46b-215a-1(11)(A)(vi) (2005). The fact that other jurisdictions specifically include in-kind benefits reinforces our conclusion that these benefits should not be considered as "gross income" unless they are specifically included in the statutory definition.

The petitioner points to our decision in *Thayer v. Thayer* 119 N.H. 871 (1979), wherein we concluded that fringe or in-kind benefits could be considered when determining child support. In *Thayer* we held that it was not error for the trial court to include fringe benefits because they "are a

form of enrichment which indirectly bear upon plaintiff's ability to pay alimony and child support" and "represent compensation for personal expenditures which plaintiff would otherwise be required to pay from his salary." *Id.* at 873. While, for reasons set out above, we agree with the determination in *Thayer* that such benefits may be considered in certain circumstances, *see* RSA 458-C:5, we find *Thayer* inapplicable to this case.

In *Thayer* we stated that "[m]atters of support and alimony are within the sound discretion of the trial court *unrestricted by fixed formulas and guidelines* . . . ." *Id.* at 873 (emphasis added). After *Thayer* was decided, the legislature adopted child support guidelines for determining child support. *See generally* RSA chapter 458-C. The statute specifically defines "gross income" and states that the child support guidelines shall be applied in all child support cases. RSA 458-C:2, IV, :4, I; *see also In the Matter of Forcier & Mueller*, 152 N.H. 463, 464 (2005). Thus, to the extent *Thayer* held that child support orders were unrestricted by formulas or guidelines, it has been superseded by the enactment of RSA chapter 458-C, and does not govern our interpretation of the statute.

■ For the above reasons, we hold that in-kind benefits are not included as items of "gross income" under RSA 458-C:2, IV, but may be considered under the special circumstances set out in RSA 458-C:5. Here, the petitioner argued that the respondent's in-kind benefits should be included in his "gross income" when calculating child support. As we have concluded that in-kind benefits are not an item of "gross income" under RSA 458-C:2, IV, we hold that the trial court did not err in rejecting the petitioner's argument. Also, although in-kind benefits may be considered under the special circumstances stated in RSA 458-C:5, the petitioner offered no argument that the respondent's receipt of benefits created such circumstances. Accordingly, the trial court did not err by not considering the benefits under RSA 458-C:5.

The petitioner next contends that the trial court failed to rule and make findings upon her motions for contempt. More specifically, the petitioner argues that her motions had requested that the respondent be held in contempt for numerous reasons, including his failure to pay alimony, and that the trial court did not address her motions.

■ "The contempt power is discretionary and the proper inquiry is not whether we would have found the respondent in contempt, but whether the trial court unsustainably exercised its discretion." *In the Matter of Stall & Stall*, 153 N.H. 163, 168 (2005). The record demonstrates that the petitioner requested that the respondent be held in contempt for withholding a portion of an alimony payment, not providing proof of life insurance, not providing tax documents, and for being six months in

arrears on alimony. During the May 2005 hearing, the respondent paid the previously withheld portion of the alimony payment, and turned over the requested documents. Thus, the only issue remaining was the respondent's alleged arrears on alimony, an issue upon which the petitioner presented no evidence. Because the petitioner presented no evidence upon the only issue requiring a ruling from the trial court, we cannot say that the trial court unsustainably exercised its discretion by not finding the respondent in contempt.

Finally, the petitioner argues that the trial court erred in failing to recalculate the respondent's child support obligation so that it would comport with the guidelines. According to the petitioner, when the respondent's support obligation was first calculated, an error resulted in a support amount lower than that required by the guidelines. The petitioner argues that even though she requested recalculation to correct the error, the trial court did not address the issue. The respondent counters that there is no error in the amount, but if there is an error, the parties' agreement on the amount of support makes any error irrelevant.

Because the trial court did not address the parties' arguments and because resolving them may require additional factual findings, we remand this issue to the trial court for resolution in the first instance. *See N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 619 (2004).

*Affirmed in part and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.