Hillsborough-northern judicial district
No. 2006-928

## IN THE MATTER OF JANE L. CARR AND JAMES R. EDMUNDS

Argued: October 17, 2007
Opinion Issued: December 6, 2007

*Harvey & Mahoney, P.A.*, of Manchester (*J. Campbell Harvey* on the brief and orally), for the petitioner.

*Mosca Law Office*, of Manchester (*Edward C. Mosca* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Jane L. Carr (mother), appeals an order of the Superior Court (*Barry*, J.) approving the recommendation of the Marital Master (*Dalpra*, M.) establishing the child support obligation for the respondent, James R. Edmunds (father). We reverse and remand.

The record supports the following facts. When the parties were divorced in 2000, they executed a permanent stipulation, which, among other things, awarded sole legal and physical custody of their two minor, adopted children to the mother. In the stipulation, the parties agreed that "it [wa]s in the best interests of the children that [the father] voluntarily relinquish his parental rights to the children and that [the mother] assume sole responsibility for them." They also agreed that the father would "forthwith file a Probate Court action relinquishing his rights to the children." The Superior Court (*Sullivan*, J.) approved the stipulation, but added: "If the probate court does not approve the termination of the [father]'s parental rights, the [mother] shall file a motion within thirty days of the denial for modification of the stipulation."

Six years later, on March 3, 2006, the mother filed a motion requesting that the court order child support under the New Hampshire Child Support Guidelines (the guidelines). *See* RSA 458-C:7, I (2004) (amended 2007). The father objected. Both parties submitted financial affidavits and completed child support guidelines worksheets. The parties disagreed about the amount of child support owed. The mother calculated the monthly amount at $648, while the father calculated it at $594. At a hearing, the mother requested that the father be ordered to add the children to his dental insurance policy and pay half of any uncovered orthodontic costs.

After the hearing, the trial court concluded that it was authorized to order child support. It found that the father had made reasonable efforts to relinquish his parental rights pursuant to the stipulation, but had been informed that he could not do so under RSA chapters 170-B or 170-C. In establishing the amount of support, the trial court found that "a deviation from the guidelines [wa]s appropriate" because "the [father] ha[d] relied upon the parties' prior agreement and ha[d] had little, if any, contact with the children since the parties were divorced." Accordingly, the trial court determined that the father's child support obligation was $250 per month. It also ordered the parties to split the costs of "uninsured medical expenses." The mother appeals this decision.

We will uphold the trial court's decision with regard to child support unless it is unsupported by the evidence or tainted by an error of law. *In the Matter of State & Estate of Crabtree*, 155 N.H. 565, 570 (2007).

"New Hampshire's child support guidelines are codified in RSA chapter 458-C, and establish a uniform system to determine the amount of child support awards." *In the Matter of Baker & Winkler*, 154 N.H. 186, 187 (2006) (citation omitted). "The purpose of RSA chapter 458-C is not only to ensure uniformity in determining the amount of child support, but also to ensure that both the custodial and non-custodial parents share in the support responsibility for their children, according to the relative percentage of each parent's income." *In the Matter of Barrett & Coyne*, 150 N.H. 520, 523-24 (2004) (citations omitted). To this end, "[t]hrough a complex scheme of definitions and formulae, the legislature provided guidelines from which the trial court . . . determines a parent's total child support obligation." *Id.* at 524 (citations omitted); *see* RSA 458-C:2 (Supp. 2006) (amended 2007); RSA 458-C:3 (2004) (amended 2007). "There is a rebuttable presumption that a child support award calculated under the guidelines is the correct amount of child support." *Baker & Winkler*, 154 N.H. at 187 (citation omitted); RSA 458-C:4, II (Supp. 2006). The presumption may be overcome and the trial court may deviate from the guidelines when a party shows by a preponderance of the evidence that the application of the guidelines would be "unjust or inappropriate" because of "special circumstances." *Baker & Winkler*, 154 N.H. at 187; RSA 458-C:4, II; RSA 458-C:5, I, II (Supp. 2006) (amended 2007). These guidelines, however, must be applied in all child support cases, including orders modifying an existing support order. *Baker & Winkler*, 154 N.H. at 187; RSA 458-C:4, I (Supp. 2006).

The mother argues that the trial court improperly based its deviation from the guidelines upon the father's reliance upon the parties' prior agreement that the father would relinquish his parental rights, and his lack of contact with the children after the divorce. The mother reasons that RSA 458-C:5, I, limited the trial court to considering as "special circumstances" only those issues that either are fiscal in nature or affect a parent's ability to provide for a child's needs. She also claims that the trial court erred in failing to address her requests for dental insurance coverage and uncovered orthodontic expenses.

The father counters that the mother is judicially and equitably estopped from claiming that the parties' agreement is not a special circumstance warranting a downward deviation from the guidelines, and, even if she is not estopped, the trial court's bases for deviation were proper under RSA 458-C:5, I (h) and (j). He also contends that: the trial court's order

regarding health insurance and uninsured medical expenses sufficiently addressed the mother's requests for dental insurance and uncovered orthodontic expenses; the trial court was not required to make a distinct order with respect to such expenses; and the trial court was not required to make written findings with respect to orthodontic costs because the mother never asserted that orthodontic treatment constituted a special circumstance warranting an upward adjustment in the child support award.

We first address the father's estoppel arguments. "The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Cohoon v. IDM Software*, 153 N.H. 1, 4 (2005) (quotation and citations omitted); *see also Porter v. City of Manchester*, 155 N.H. 149, 156 (2007). While the circumstances under which judicial estoppel may be invoked vary with each situation, the following three factors typically inform the decision whether to apply the doctrine: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Porter*, 155 N.H. at 157; *Cohoon*, 153 N.H. at 4-5.

The father argues that because the parties' agreement at the time of the stipulation to sever the legal relationship between himself and his children was a special circumstance under RSA 458-C:5, I, the mother is now judicially estopped from claiming that that agreement does not qualify as a special circumstance under that same statute. We disagree.

Specifically with respect to the third judicial estoppel factor, the father argues that the mother would gain an unfair benefit and he would suffer an unfair detriment if the mother is not estopped. However, RSA 458-C:7, I, gives either parent the right to apply for modification of a child support order every three years, without requiring the moving parent to show a substantial change of circumstances. A purpose of this statute is to resolve inequities in child support orders, *In the Matter of Peirce & Peirce*, 146 N.H. 611, 613 (2001), and to allow the trial court to account for non-substantial changes in the parties' economic circumstances and the effect of those changes on the parties' needs. Moreover, under RSA 458-C:7, I, the mother was entitled to automatic review of the *existing* support obligations by the court. *Id.* at 614. In reviewing the modification petition, the trial court was required to recalculate the parties' total support obligation based upon their current incomes, *In the Matter of Donovan &*

*Donovan*, 152 N.H. 55, 60 (2005), and reassess whether existing special circumstances warranted deviation from that obligation. It is therefore statutorily irrelevant that the parties' agreement was considered a special circumstance six years earlier, and, as such, the mother is entitled to argue that the prior agreement is not presently a special circumstance. The mother did not gain an *unfair* advantage or impose an *unfair* detriment upon the father when she sought to modify child support pursuant to a statutory *de novo* review process designed to ensure that child support orders remain equitable. Because the father has failed to establish that any unfairness resulted from the mother's allegedly inconsistent positions, judicial estoppel does not apply.

 The father also contends that the mother is equitably estopped from claiming that the parties' agreement is not a special circumstance. "Equitable estoppel serves to forbid one to speak against his own act, representations or commitments communicated to another who reasonably relies upon them to his injury." *J.G.M.C.J. Corp. v. C.L.A.S.S., Inc.*, 155 N.H. 452, 462 (2007) (citation omitted). The party asserting equitable estoppel must prove: (1) a knowingly false representation or concealment of material facts; (2) a recipient who was intentionally, or through culpable neglect, induced to rely upon the false representation or concealment, and ignorant of the truth; and (3) a resultant injury. *Id.* "Under certain circumstances, an estoppel may arise from silence or inaction, as opposed to an actual misrepresentation. This form of estoppel, however, is limited to situations where the silent party has knowledge and a duty to make a disclosure." *Guri (Cushing) v. Guri*, 122 N.H. 552, 555 (1982) (citations omitted).

██ The father claims that estoppel may arise from the mother's failure to return to the trial court for modification of the support order within thirty days of the probate court's decision not to approve the termination of the father's parental rights. We disagree. The purpose of child support is to provide economic support for the *children*, not the obligee parent. *See* RSA 458-C:1. Regardless of the parents' actions, the children should not be deprived of the amount of support to which they are entitled. Therefore, equitable estoppel cannot apply to prevent a court from awarding the proper amount of support to protect the children, particularly where the legislature has explicitly permitted parents *de novo* review of existing support obligations. *See* RSA 458-C:7, I. Accordingly, the doctrine of equitable estoppel does not apply.

We now address whether the trial court properly deviated from the child support guidelines pursuant to RSA 458-C:5, I. In matters of statutory interpretation, we are the final arbiters of the legislative intent as

expressed in the words of the statute considered as a whole. *Petition of State of N.H. (State v. Johanson)*, 156 N.H. 148, 151 (2007). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Bendetson v. Killarney, Inc.*, 154 N.H. 637, 641 (2006).

RSA 458-C:5, I, allows for deviation from the guidelines and provides, in pertinent part:

> Special circumstances, *including, but not limited to*, the following, if raised by any party to the action or by the court, shall be considered and may result in adjustments in the application of support guidelines provided under this chapter. The court shall make written findings relative to the applicability of the following:
>
> . . . .
>
> (h) Parenting schedule;
>
> . . . .
>
> (j) Other special circumstances found by the court to avoid an unreasonably low or confiscatory support order, taking all relevant circumstances into consideration.

(Emphasis added.)

The father first argues that his reliance upon the parties' prior agreement requiring him to relinquish his parental rights may constitute a special circumstance under RSA 458-C:5, I(j). We disagree.

"When the legislature uses the phrase 'including, but not limited to' in a statute, the application of that statute is limited to the types of items therein particularized." *In the Matter of Clark & Clark*, 154 N.H. 420, 423 (2006) (citations omitted); *see also In the Matter of Fulton & Fulton*, 154 N.H. 264, 267 (2006). Except for subsection j, all of the special circumstances listed in RSA 458-C:5, I, are economic in nature and relate to the impact of a parent's financial condition upon his or her ability to meet a child's needs. As a result, the "other special circumstances" that a court may consider under subsection j must similarly involve economic factors.

This interpretation is consistent with the stated purpose of RSA chapter 458-C "[t]o minimize the *economic consequences* of divorce to children," *In*

*the Matter of Jerome & Jerome*, 150 N.H. 626, 630 (2004) (emphasis added; quotation and brackets omitted), and ensure that children are not deprived of a *standard of living* equal to that of the subsequent family of the parent paying child support, *In the Matter of Dolan & Dolan*, 147 N.H. 218, 221 (2001). *See also* RSA 458-C:1, II (Supp. 2006). It would defeat the statute's purpose to allow factors unrelated to the economic circumstances of the parents and children to dictate whether and to what extent children are financially supported.

 Furthermore, we have previously interpreted the special circumstances set forth in RSA 458-C:5, I, as addressing "matters of support adjustments based upon income and expenses." *In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 526 (2003). We have also held that although gifts and in-kind benefits do not constitute income for child support purposes, trial courts may consider their impact upon the financial condition of the parties as special circumstances under RSA 458-C:5, I(j). *Clark*, 154 N.H. at 424, 425; *Fulton*, 154 N.H. at 268. Consistent with this prior case law, we conclude that the "other special circumstances" that a court may find to avoid an unreasonably low or confiscatory support order must be economic in nature.

 Accordingly, standing alone, the father's reliance upon the parties' prior agreement cannot, as a matter of law, qualify as a special circumstance under RSA 458-C:5, I(j). No evidence in the record demonstrates how the father's reliance upon the stipulation affected his present financial situation such that the guidelines support amount is confiscatory. Moreover, the trial court did not find that the father suffered any economic detriment as a result of the agreement. Therefore, we reject the father's argument that the trial court's decision to deviate from the guidelines based upon his reliance upon the prior agreement may be upheld under RSA 458-C:5, I(j).

The trial court's other basis for deviation was the father's lack of contact with the children since the divorce. The father asserts that this lack of contact coupled with the mother's assumption of sole financial responsibility for the children represent the parties' "parenting schedule," which is a special circumstance under RSA 458-C:5, I(h). He argues that this "parenting schedule" warrants a downward deviation from the guidelines amount. We disagree.

RSA 461-A:1, VI (Supp. 2006) defines "parenting schedule" as "the schedule of when the child is in the care of each parent." Under a prior version of RSA 458-C:5, I(h), which listed as a special circumstance "split or shared custody arrangements," RSA 458-C:5, I(h) (2004), we noted that sharing equal physical custody of children may result in a downward

adjustment of the obligor parent's support obligations, *see In the Matter of Folley & Folley*, 149 N.H. 393, 395 (2003); *Wheaton-Dunberger v. Dunberger*, 137 N.H. 504, 508 (1993). This reduction may be appropriate in such circumstances because the obligor parent assumes virtually the same child-rearing expenses as the obligee parent. *Cf. Wheaton-Dunberger*, 137 N.H. at 508-09. The same rationale does not apply to this case.

Here, pursuant to the "parenting schedule," the children stay with the mother at all times, and, consequently, the mother assumes all the child-rearing expenses. The father has no visitation rights or parenting rights or responsibilities, and, therefore, incurs no costs in caring for the children outside of his support obligations. In these circumstances, where the father assumes no child-rearing expenses as a result of the parenting schedule, it would be contrary to the purpose of the child support statute to allow the father to pay *less* than the guidelines amount. *Cf. Bourdon v. Bourdon*, 105 N.H. 432, 433-34 (1964); *Guggenheimer v. Guggenheimer*, 99 N.H. 399, 403 (1955). Therefore, we reject the father's contention that a downward deviation from the guidelines was justified under RSA 458-C:5, I(h).

Furthermore, to the extent the father also contends that his lack of contact with the children constituted another special circumstance under RSA 458-C:5, I(j), we reject that argument for the same reasons set forth above with respect to the father's reliance upon the prior agreement. The father's lack of contact is not economic in nature and has no relation to the parties' financial situation. Accordingly, we reverse the trial court's finding that special circumstances warranted a downward deviation from the guidelines, and remand to the trial court for calculation of the father's support obligation under the guidelines. *See In the Matter of Gordon & Gordon*, 147 N.H. 693, 700 (2002).

Finally, the mother contends that the trial court erred in failing to address her requests for dental insurance coverage and payment of uncovered orthodontic expenses. The record is ambiguous as to whether the trial court ruled upon these requests. We decline to examine these issues without the benefit of a clear finding by the trial court. *Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 513 (2006). Accordingly, we remand to the trial court for clarification or consideration of these requests by the mother.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.